## WESLEY BEST, and HOSEA SNELL, Appellants, *v.* CHARLES L. ALLEN, Appellee.

### APPEAL FROM MACOUPIN.

In an action of trespass, the jury may give exemplary damages, against a defendant who willfully damages plaintiff's goods, notwithstanding the defendant may have made an entry in good faith, supposing he had a right so to do.

A willful injury to the goods, is as much a ground for exemplary damages, as a willful and unlawful entry.

The amendment of 1857 to the homestead act makes the release of the homestead right by the wife necessary to all conveyances of the homestead, and protects it from a sale under a trust deed, in which the wife has not waived that right.

THIS was an action of trespass, commenced by appellee against appellants, at the December term, 1861, of Macoupin Circuit Court, for entering the house of plaintiff, and injuring, tearing, spoiling and destroying certain articles of furniture in the same.

The defendant pleaded, 1st, Not guilty; 2nd, Special plea of justification—that defendant Best was the owner of the house described in the declaration, and entitled to the possession of the same, and that plaintiff's goods and chattels in the declaration mentioned were wrongfully in the said house, encumbering the same; and that defendant Best, and defendant Snell as the servant of Best, and by his authority, entered the premises and removed the said goods and chattels, doing no unnecessary damage to the same, etc.

Replication, and trial by jury.

The plaintiff then introduced as witnesses, *Elizabeth Chapman*, *Jesse Chapman*, *Sarah Tweedy*, *Naivan McAllister*, and *Selby Snell*, who testified, in substance, that Charles L. Allen, the plaintiff, left Staunton to go to Pike's Peak about twelve months ago; that Frances E. Allen is his wife, and resided in the house mentioned; that Allen and wife had lived in the house for five or six years; Mrs. Allen was still living in the house, and keeping boarders and travelers; on Monday, November 17, 1861, defendants entered the premises, took up carpets, piled up furniture in the corners of the rooms, and injured some of the furniture; that one Selby Snell moved into the premises by authority of defendants.

Defendants then offered *Selby Snell*, who testified, in substance, that he rented the property from Wesley Best, and moved into the same November 18, 1861; moved the furniture in the different rooms in the house into the parlor; handled the goods carefully, and did them no damage.

Defendants then offered a mortgage from Charles L. Allen to Wesley Best, dated January 27, 1860, for premises in controversy, to secure note from Allen to Best for $396.75, with power to Best, in case of default of payment of note, to sell premises: also, a note of same date as deed, for amount above specified: also, a copy of an advertisement of Best for sale of said premises in satisfaction of note: also, a deed, under said sale, from Wesley Best to David R. Sparks, dated November 10, 1860: also, *S. S. Gilbert*, as a witness, who testified in substance, that he advertised the premises for Wesley Best, and sold them on the 10th of November, 1860, at public sale, and struck the same off to David R. Sparks, for $412.17.

Defendants then read in evidence, without objection, quitclaim deed from David R. Sparks and wife to defendant Best for same premises; which closed defendants' case.

The court instructed the jury as follows:

1. That if they believe, from the evidence, that the defendants entered the premises of the plaintiff, and willfully injured and damaged the personal property of the plaintiff therein, the jury, in assessing the plaintiff's damages, are not confined to the actual injury to the property, but, in addition to the

actual damages, may assess such exemplary damages as they may in their discretion deem just.

2. That if they believe, from the evidence, that the plaintiff in this cause was in possession of, and occupying the said premises as a homestead at the time of the execution of the mortgage from plaintiff to defendant, and that Frances E. Allen is the wife of said plaintiff, and was so at the date of the mortgage, and that she still continued to occupy the same as a homestead, the possession of said Frances E. Allen is the possession of the plaintiff; and that plaintiff, under the act of the legislature entitled "Homestead," in force July 4, 1851, is entitled to retain possession of said premises, notwithstanding said mortgage, and the jury must find for the plaintiff.

To the giving of which instructions defendants excepted.

The cause was thereupon submitted to the jury, who returned a verdict for plaintiff, for $133.75.

Defendants then moved the court for a new trial, which was overruled, and defendants excepted.

The cause is brought to this court by appeal, and the following errors are assigned : The court erred in giving the first instruction to the jury ; in giving the second instruction to the jury ; and in overruling the motion of defendants for a new trial.

GILBERT & RINAKER, for Appellants.

I. The damages in this case, though not for a large amount, are, under the circumstances of the case, excessive. The proof does not show the real damage to the property to be over fifty dollars. The excess must have been given by the jury as exemplary damages.

II. Although juries may, in actions for torts, give exemplary or vindictive damages, as a punishment to the party committing the tort, yet, in this case, the jury could not properly give vindictive damages, because the plaintiffs entered the premises in good faith, and under claim and color of title, and did no wanton injury to the property therein.

III. To justify the jury in finding a verdict against the plaintiffs for vindictive damages, the circumstances should

show that defendants entered the premises with a wicked or malicious intent, or, having entered, did wanton and unnecessary damage to defendant's property. On the contrary, defendants entered supposing they had legal title to the premises.

IV. The instruction given by the court to the jury upon this point does not embody the law, and was calculated to mislead the jury. The court makes no distinction between a lawful and an unlawful entry, nor whether plaintiffs entered in good or bad faith, nor whether the damage done to the property in the house was necessary or unnecessary in removing the property therein.

V. The court also erred in giving the second instruction to the jury. The statute gives the right of homestead to the *owner* of the property. The instruction assumes that mere occupation or possession is sufficient to entitle the party to the homestead. This court has decided that a party with less estate than in fee may retain the homestead. But the party must have a larger estate than the mere possession.

VI. This court has already decided that the homestead act of 1851 does not apply to sales under deeds of trust. *Ely et al.* v. *Eastwood*, 26 Ill. 107; *Smith* v. *Marc*, 26 Ill. 155. The deed in this case, however, was executed since the amendatory act of 1857. The question then is, does the act as amended by the legislation of 1857 extend it to deeds of trust? The act of 1857 only changes the act of 1851 by adding the words "and his wife, if he have one."

VII. There is nothing in the act of 1857 indicating an intention on the part of the legislature to extend the act to a new class of sales. The kind of sales in the act of 1851 are sales under any process or order from any court of law or equity in this State.

VIII. The object of the legislature was to amend the act so as to require the signature and acknowledgment of the wife in order to make such a waiver or release of the homestead as to make the same subject to execution—not to extend the same to new cases, but simply to require something more

to be done to make a valid release or waiver in the cases mentioned in the original act.

IX.   The court instructs the jury that under the act of 1851 the party is entitled to a homestead.   The Supreme Court, in the cases above named, has decided otherwise.

X.   The way in which the act of 1851 is to be amended is clearly pointed out in the act of 1857.   If, then, the homestead exemption is extended to a class of sales not contemplated by the act of 1851, it can only be by that clause in the act of 1857 declaring the object of the act.   It is fair to infer that if the legislature had intended to have exempted the homestead from all sales under judicial process or otherwise, they would not have made so important a change in the law in such loose and indefinite language.

It is a maxim in the law that the expression of one thing is the exclusion of another.   As the legislature has clearly expressed the amendment to be made to the act of 1851, it excludes the idea that they intended so radical a change in the law as the one contended for by the appellee.

C. A. WALKER, and STUART, EDWARDS & BROWN, for Appellee.

CATON, C. J.   We think both of the instructions given for the plaintiff are correct.   In the first, the jury are told that if the defendant entered the plaintiff's premises and willfully damaged his goods, they may give exemplary damages.   It is argued that if the defendant entered in good faith, and under the belief that he had a right to enter and eject the plaintiff's family, that his willful injury of the goods in doing so, should not subject him to smart money.   We do not so understand the law.   A willful injury of the goods is as much a ground for exemplary damages as a willful entry when the party knows he had no right of entry.

The second instruction is this:   "That if they believe, from the evidence, that the plaintiff in this cause was in possession of and occupying the said premises as a homestead at the time of the execution of the mortgage from plaintiff to defendant,

and that Frances E. Allen is the wife of said plaintiff, and was so at the date of the mortgage, and that she still continued to occupy the same as a homestead, the possession of the said Francis E. Allen is the possession of the plaintiff; and that plaintiff, under the act of the legislature entitled 'Homestead,' in force July 4, 1851, is entitled to retain possession of said premises, notwithstanding said mortgage, and the jury must find for the plaintiff."

As this mortgage was in effect a deed of trust, containing a power of sale, and under which the property was sold, it is insisted that it is not affected by the homestead law of 1851. That may be true; but this mortgage was executed in 1860, and consequently comes under the operation of the amendment of 1857, which, as we have decided at this term, in the case of *Patterson* v. *King,* applies to all conveyances, and makes the release of the homestead right by the wife necessary to the validity of all conveyances of the homestead. Under this decision this instruction was undoubtedly right. The plaintiff was *prima facie* the owner of the land.

We shall not review the evidence on the motion for a new trial. We are entirely satisfied with the verdict. Here was an unwarrantable attempt by the defendant to take the law into his own hands, in a case where he had no right to take the possession, and even if his title had been good, he should have brought ejectment to obtain the possession. And in removing the plaintiff's goods we agree with the jury, that the evidence shows he did willful damage. All the circumstances of the case show an aggravated outrage.

The judgment is affirmed.                    *Judgment affirmed.*