88   73
a110   278

T. T. SMITH *et al.*, Appellants, v. S. H. WATSON *et al.*, Appelleés.

1. **Appeal:** RECORD: IMMATERIAL DEFECTS: TRIAL DE NOVO. Where the appellant's abstract of the record in an equity cause purported to be full and complete, but was followed by two additional abstracts by appellees containing evidence, without any claim, however, that the evidence was not fully presented in the record thus made, and the appellants in an amendment to their abstract alleged that the evidence was fully presented in the various abstracts and amendments filed, *held*, that the appellants were entitled to a trial *de novo* in the supreme court, although there were some formal defects in the record in the manner in which some of the exhibits were identified and presented.

2. **Contracts:** MUTUAL MISTAKE: REFORMATION. A written contract recited that S., having sold and conveyed certain real estate to grantees therein named, it was agreed between S. and said grantees that in consideration of said conveyance the grantees would furnish W. with certain personal property therein specified. While S. held the naked legal title to said real estate, W. was the real owner thereof, the contract was in fact between W. and said grantees, and S. was made a party only for the purpose of securing performance of the agreement for the conveyance of the land. *Held*, that the provision

that the conveyance should be made by S., having been insei ted with a full understanding of the facts, and after a draft of the agreement with W.'s name inserted instead had been destroyed, it could not be deemed a mistake; but that the recital that the contract was between S. and the grantees, being contrary to the evident intention of all parties to the agreement, it would be reformed by the insertion of W.'s name instead of that of S., upon the ground of mutual mistake, although the presence of S.'s name may have been known to all parties at the time the contract was made.

3. ――――: ――――: ――――. Said contract as originally drawn provided for a forfeiture of five thousand dollars by either party who should make default. Upon the request of W., however, it was attempted to so change the contract as that the grantees only should forfeit that sum for default on their part, and that in case of default by W. he should forfeit the land, but the contract as signed provided that if *either party* failed to perform, the grantees should pay to W. the sum of five thousand dollars. *Held*, that the grantees were entitled to have the contract so reformed as to provide for such forfeiture by them only in case of their own default.

4. ――――: FORFEITURE: COLLATERAL AGREEMENTS: EFFECT. A forfeiture under a contract can not be claimed upon the ground of the default of the other contracting party in an independent agreement, subsequently made, in relation to the same subject-matter, and growing out of the same transaction.

5. ――――: ――――: EVIDENCE. Under the contract in question the grantees agreed to ship certain goods to W. as he might order, but provided that the first shipment was to be made on or about the first day of December, and thereafter in monthly shipments until the whole amount of goods had been shipped. On the first day of November the grantees wrote W. of the proportion of the different grades they were preparing to make the first shipment, and requested him to advise them if the same would be satisfactory, but W. made no reply. On the sixth day of December the grantees made the first shipment under the contract, and although the proportion of the goods shipped was slightly in excess of the amount agreed upon under the contract, W. made no complaint on that account at the time, nor gave the plaintiffs an opportunity to correct the error, but refused to receive the goods, and ordered a draft made upon him returned, upon the grounds that certain samples had not been supplied him within the time agreed in a subsequent independent contract, and that no order for a shipment of the goods had been made. *Held*, that the plaintiffs were entitled to claim a forfeiture of the conveyance of real estate provided for in the contract.

6. **Contract to Convey Real Estate by Warranty Deed:** WAIVER. Although the contract provided for a conveyance of said real estate by warranty deed, *held*, that a deed of special warranty having been inspected by the plaintiffs before it was deposited in

escrow under the terms of the agreement, and accepted by them, the·
right to insist upon a general warranty deed must be deemed waived.

*Appeal from Benton District Court.*—HON. L. G. KINNE,.
Judge.

SATURDAY, MAY 13, 1893.

ACTION in equity for the reformation of an agreement in writing, to recover damages for an alleged
breach thereof, and for other relief. The defendant S.
H. Watson demands judgment on a counterclaim for
an alleged breach of the same agreement. There was
a hearing on the merits, and a decree reforming the
agreement in part, and in favor of Watson for damages. From that decree the plaintiffs appealed. After
their appeal was perfected, the defendants appealed
from so much of the decree as reformed the agreement.
—*Upon defendant's appeal, affirmed; upon plaintiff's*
*appeal, reversed.*

*E. C. Preston, J. D. Nichols* and *C. Nichols,* for
appellants.

*Chas. A. Clark* and *Geo. W. Burnham,* for appellees.

ROBINSON, C. J.—I. The appellees claim that this
cause can not be tried anew in this court for the reason

**1. APPEAL: record:, immaterial defects: trial de novo.** that some of the documentary evidence is
not properly shown by the abstracts. The
claim that the evidence is not fully presented by the abstracts is made for the first time at the
close of the appellees' argument. The abstract of the
appellants purports to be full and complete. It was
followed by two additional abstracts, filed by appellees,.
each of which set out evidence, and neither of which
claimed that the evidence was not fully presented by
the abstract and additional abstracts taken together.

In an amendment to their abstract, the appellants allege that the evidence is fully presented by the various abstracts and amendments filed. It is said that, notwithstanding the facts recited, the record shows that some of the exhibits are not identified, or are not before us. We are satisfied, however, that, although there are some formal defects in the manner in which some of the exhibits are identified and presented, yet that such defects are not of such a character as to prevent a full consideration of the case on its merits, and therefore that they are not material. Defects in the record, which can not affect the final result, afford no ground for refusing a trial *de novo* in this court.

II. In October, 1889, the plaintiffs were engaged in the business of manufacturing and selling cigars in Philadelphia. The defendant Watson was engaged in the banking business at Vinton, in this state, and claimed to own several thousands of acres of pine lands in the state of Georgia, the title to which was vested in the defendant C. J. Santmyer. After some preliminary negotiations the parties named signed an agreement in writing as follows:

2. CONTRACTS: mutual mistake: reformation.

"Whereas, C. J. Santmyer, in Benton county, state of Iowa, has this day sold and conveyed, by warranty deed, to T. T. and R. E. Smith, of the city of Philadelphia, in the state of Pennsylvania, eleven thousand (11,000) acres of pine land, situated in Camden county, in the state of Georgia, which said deed is deposited with Alexander Runyon, county treasurer of Benton county, state of Iowa, to be held by him until the terms and conditions of this contract, as hereinafter specified, shall be fully complied with by the said grantees.

It is, therefore, agreed by and between the said C. J. Santmyer and the said T. T. and R. E. Smith, that in consideration of the conveyance of said

lands, as above specified, the said T. T. and R. E. Smith are to furnish to S. H. Watson, f. o. b. at Philadelphia, cigars of the brands hereafter named, to the amount, in value, of fifty-seven thousand, seven hundred and fifty dollars ($57,750). Said cigars to be shipped, upon the order of the said S. H. Watson, in eight (8) equal monthly shipments, or as near in equal shipments as can be conveniently done, the one-third of each shipment to be cash, money to accompany order, the first shipment to be made on or about the first day of December, 1889, and then in monthly shipments until the whole amount shall have been shipped as above specified. Said cigars are to be of the following brands, to wit: First brands, Captain Cook and Chrysanthemums, at forty-five dollars ($45) per thousand; second brands, The Latest and Harvest Moon, at thirty-six dollars ($36) per thousand.

"It is further mutually agreed, by and between each and all of said parties, that, if either of said parties shall fail to keep and perform his or their part of the agreement, said T. T. and R. E. Smith shall forfeit and pay to the said S. H. Watson the sum of five thousand dollars ($5,000), as liquidated damages; and, if said S. H. Watson shall fail to perform on his part, he shall forfeit the deed and all right thereto. And it is further mutually agreed by and between each and all of said parties that, when said S. H. Watson shall have received the full amount due him under this contract, then he will cause the deed above mentioned to be delivered to said grantees therein named. In witness whereof, we have hereunto subscribed our names in duplicate this fifteenth day of October, 1889.
"[Signed]                    C. J. SANTMYER,
                         "S. H. WATSON,
                         "T. T. & R. E. SMITH."

The plaintiff claims that in drawing the agreement the name of C. J. Santmyer was inserted by mistake,

in the first paragraph, in lieu of that of S. H. Watson, and that the paragraph should read; "Whereas, S. H. Watson, in Benton county, state of Iowa, has this day sold and conveyed, by warranty deed, to T. T, and R. E. Smith," etc. Also, that Santmyer's name was inserted by mistake, in lieu of that of Watson, in the first part of the second paragraph, which should have been made to read: "It is therefore agreed by and between the said S. H. Watson and the said T. T. and R. E. Smith," etc. The plaintiffs further claim that a mistake occurred in the third paragraph, and that the first part of it should have been made to read as follows: "That, if T. T. and R. E. Smith shall fail to keep and perform their part of this agreement, said T. T. and R. E. Smith shall forfeit and pay to the said S. H. Watson the sum of five thousand dollars (5,000), as liquidated damages," etc. It is also claimed that the mistakes were mutual. The district court found that there was a mutual mistake in the last paragraph, and reformed it to read as follows: "It is further mutually agreed by and between each and all of said parties that, if the said T. T. and R. E. Smith shall fail to keep and perform their part of this agreement, the said T. T. and R. E. Smith shall forfeit and pay to said S. H. Watson the sum of five thousand dollars, as liquidated damages; and, if the said S. H. Watson shall fail to perform on his part, he shall forfeit the deed and all rights thereto."

The evidence shows, without conflict, that Santmyer held the naked legal title to the land, and that he had no part in the negotiations which led to the signing of the written agreement. He held the title for the exclusive benefit of Watson, and appears to have signed the agreement only to secure the performance of the agreement on Watson's part for the conveyance of the land. The plaintiffs were informed while the negotiations were pending that the conveyance of the

land would be made by Santmyer, and the first para-
graph of the agreement was drawn with a full under-
standing of the facts, after a preliminary draft, in
which Watson's name had been inserted where
Santmyer's now appears, had been read and destroyed.
No mistake in regard to that paragraph is shown, and
the district court rightly refused to reform it.

But we are of the opinion that Santmyer's name
appears in the first part of the second paragraph by a
mutual mistake of the parties. It is true that they
may have known it was there, but, if so, they were
misled by the error in the original draft of the first
paragraph, which had been corrected. Nothing in the
negotiations had between the parties suggests any
intent to obligate Santmyer further than was necessary
to secure a conveyance of the land according to the
agreement of Watson. That a mistake of that kind
may be corrected by a court of equity is well settled.
See *Lee v. Percival*, 85 Iowa, 639, and authorities
therein cited. We conclude that the second paragraph
should be corrected by striking out the words, "the said
C. J. Santmyer," and inserting in lieu thereof the
name, "S. H. Watson."

The evidence in regard to the third paragraph
shows, beyond question, that it contains the mistake
alleged by the plaintiffs. It is true Watson
states the agreement to be that if he
failed to perform his agreement he was to surrender
the deed to the plaintiffs, and receive from them the
sum of five thousand dollars, and that if they failed on
their part they were to pay him the sum of five thou-
sand dollars. But an agent, named Bates, who brought
the parties together, and heard the negotiations, R. E.
Smith, who acted for the plaintiff, and W. C. Connell,
the attorney who drew the agreement, all testify posi-
tively that the plaintiffs were to pay Watson five thou-
sand dollars only in case they failed to perform on their

part. It is shown that the agreement, as first drawn, provided for a forfeiture of five thousand dollars by the plaintiffs if they failed to perform the agreement on their part, and for a like forfeiture by Watson in case of failure on his part, but, when it was read as thus drawn, Watson objected, and said he would forfeit nothing but the land in case he failed to perform the agreement. A change was then made in the draft, but by mistake Mr. Connell failed to make the agreement, as changed, express the intent of the parties, and they did not discover the mistake at that time. It is true the land was included in the agreement at three dollars and fifty cents per acre, but the evidence shows that it was not worth more than from fifty cents to one dollar per acre, and it is doubtful if the title held by Santmyer was of any value. We conclude that the third paragraph of the agreement should be reformed as demanded by the appellants.

III. The district court found that the plaintiffs had violated their agreement, and decreed that Watson

4. ——: forfeiture: collateral agreements: effect.

recover of them, on account of such violation, the sum of five thousand dollars, as liquidated damages. It appears that after the agreement was signed, and the deed it referred to had been deposited with Runyon, Watson and R. E. Smith had some conversation in regard to furnishing samples to Watson for use in selling the cigars which he was to receive. Smith agreed to send such samples, but there is some dispute as to the time when they should have been sent. Watson insists that they should have been sent before or during the first week of the next month. Smith admits that Watson asked him to have them sent within a week or two, but says he refused to agree to do so, for the reason that he wished to superintend their preparation, and would not be home for two or three weeks. He arrived at home about the twelfth of November, but was delayed,

in preparing the samples, by wet weather, and they were not sent until the twenty-seventh of that month. On the fifth day of December, the plaintiffs shipped fifty thousand cigars of each of the four brands specified in the agreement, amounting, at the agreed price, to eight thousand, one hundred dollars. The cigars were sent to Vinton, consigned to the plaintiffs, with a sight draft on Watson for one-third the contract price of that shipment and the samples. He refused to honor the draft, and on the seventeenth day of December notified the plaintiffs that he would not do anything further under the agreement. He claims that he was induced not to order the first shipment of cigars provided for in the agreement by the promise of the plaintiffs to send him samples from which he could determine what proportion of each brand to order; that, by delaying to send the samples, the plaintiffs waived an order until the defendant could make the selections from the samples sent; that the plaintiffs waived an order for the first shipment, and made it larger than the agreement contemplated, and did so to compel the defendant to receive and pay for the cigars sooner, and more rapidly, than the agreement provided; and that in consequence of these alleged violations of the agreement he elected to terminate it. He also claims that by reason of such violations he is entitled to recover the forfeiture of five thousand dollars.

A careful examination of the evidence fails to disclose any waiver by the plaintiffs of their right to insist upon an order until Watson should have an opportunity to examine the samples, and make selections from them. The agreement to send samples was independent of the agreement in suit. It appears to have been made solely for the benefit of Watson, and, if sustained by a valid consideration, a matter which we do not determine, did not, in terms, and was not

intended to, affect the liability of either party under the other agreement. Watson said of the agreement to send samples: "There was nothing said at that time in reference to the shipments, or the deferring of the shipments. There was nothing said about that afterwards in conversation with Smith." The failure of the plaintiffs to send the samples when expected gave Watson no right to delay sending in his order, and demand a forfeiture.

IV. On the first day of November, the plaintiffs wrote to Watson a letter as follows: "In regard to your transaction with our Mr. R. E. Smith for cigars, we had some days ago from him a general outline of the business, but are not advised as to the proportion of each brand for the first shipment; and as he is absent, and not expected home for some days, we write to ask you if one-half of each grade will be suitable. We are preparing the first shipment on that basis, as our experience teaches us that to be the most desirable, and we wish to give you the goods in such proportions of each grade as will be to your best advantage. Please advise us if we are correct, and oblige, yours, truly, T. T. Smith & Bro." Watson knew that the plaintiffs were entitled to an order for shipment on or about the first day of December, and, if he wished to delay it until the samples were received, ordinary business usage and good faith demanded of him a prompt answer to that letter, but he failed to answer, or acknowledge it in any manner.

On the twenty-seventh day of November, the plaintiffs notified Watson of the shipment of the samples by a letter, of which the following is a copy:

"By express to-day we forward to your above address the following tray one-fortieth samples: Chrysanthemum, 350; Capt. Cook, 350; Latest, 350; Harvest Moon, 200—1,200 cigars, which we will bill next week, with the first shipment on your order, as per agreement.

5. ——: ——: evidence.

Owing to the extreme wet weather, we have been delayed somewhat in our calculations. Unless we have instructions from you to the contrary by return mail, we shall proceed with the second shipment as with this, *i. e.* equal quantities of each of your brands."

On the sixth day of December, the plaintiffs notified Watson of the shipment made the day before by a letter, of which the following is a copy: "Enclosed, we hand you two bills, one for shipment of lot by ex. November 27th, and the other for twenty cases (200 M.) cigars forwarded P. R. R. yesterday, as per bl. ldg. attached to draft at sight for $2,717.10, being one-third cash consideration of both shipments, as per enclosed, and according to terms of contract, which we hope you will find entirely satisfactory. We wish the goods to land in good condition, and without delays in transit. We are proceeding with cigars for your second shipment, which will be about January 1st next, and which will be in equal quantities of each of your four brands, same as shipment first made, unless we are advised by return mail of any change you may desire in the proportions of said brands. Goods consigned Smith Bros."

Those letters were acknowledged by Watson in a letter written on the tenth day of December, of which the following is a copy: "Yours of the 27th and Dec. 5th recd. and noted. The samples did not come according to agreement. They were to have been here the last of October or November 1st, while they did not get here until a few days ago. We expected the samples to have been sent promptly, in order to give time for their disposition—at least, a part of them. No sale could be made unless we had the samples from which to sell. A provision of our agreement was that they were to be shipped upon the order of the writer. No such order has been given. This provision was made in order to give time and opportunity to sell them, at least a por-

tion of them. We do not wish any shipment made until, say, January 10th. This will give us the time lost while waiting for the samples. Yours, &c., S. H. Watson. P. S. While writing, your draft for some $2,700 has been presented, which I ordered returned, and for the reason above stated. Had we been furnished the samples as per agreement, we would have had shipment made direct from there, in all probability.''

It will be noticed that no objection is made in this letter to the amount of the shipment. On December fourteenth the plaintiffs notified Watson that they considered his refusal to receive the goods as a direct violation of the agreement, and that they would make a second shipment at the time provided in the agreement. On the seventeenth day of December, Watson wrote to the plaintiffs a letter as follows:

"In reply to yours of the 14th inst., I would say that your failure to furnish samples of the cigars at the time agreed upon has seriously embarrassed us in the matter of handling so large an invoice of cigars as you say you have shipped, and the contract provides that they were to be shipped upon my order. I gave no order for the shipment of cigars, hence cannot receive the cigars under the contract, and you need make no further calculations or arrangements on your part to ship same. I have, however, this proposition to make in settlement of this matter: I will receive the invoice of cigars you have shipped, and direct Alex. Runyon, county treasurer, who holds the deed to the land, to deliver same to you. This adjustment is to be in full settlement of all matters between us. In case you refuse this offer, I decline to have anything further to do with the contract, and will not receive the cigars already shipped by you, as the same were not made upon my order.''

No claim was made in this letter that there had

been a waiver of any of the provisions of the agreement, nor that the shipment is larger than was authorized; but the refusal of Watson to proceed further is based upon the failure of the plaintiffs to furnish the samples at the time he claims they should have been furnished, and upon the fact that he had not given an order as provided by the agreement. Neither of the reasons assigned was sufficient to relieve him from his obligation to carry out the agreement on his part. The plaintiffs had the right to make a shipment on or about the first day of December, and their letter of November first notified Watson that the shipment was being prepared, and, if it was not satisfactory as proposed, he should have made his wishes known at once. Had he answered the letter of November 27 promptly, he could have prevented the shipment of December 5, but he did nothing to prevent it, and cannot now be permitted to take advantage of his failure to make the order. Moreover, the shipment made was not excessive, in the absence of timely objection. The cigars were to be sent in eight equal monthly shipments, "or as nearly in equal shipments as can be done." It was explained to Watson, when the agreement was made, that it would be difficult to make the shipments equal, for the reason that the cigars were shipped in cases containing ten thousand each, and that it was difficult to secure men to work during the holidays, and, therefore, that the first shipment might be larger than the others. The samples were to be sent as soon as they were prepared, without reference to the first regular shipment, and the portion of the price of that shipment to be paid in money was but little more than three hundred dollars in excess of what it would have been had the shipment been exactly one-eighth of the entire amount. If Watson objected to the amount of the shipment and draft, he should have made his objection known as soon as he was advised of the

amount, and thus have given the plaintiffs an oppor-
tunity to correct the error, if one had been made. The
agreement provided that the cigars should be delivered
free on the cars in Philadelphia, on the order of
Watson accompanied by the money required for the
cash payment. The plaintiffs deviated from that pro-
vision, apparently, for the convenience and benefit of
Watson. Whether it was in fact for his benefit is
immaterial, as the deviation would not excuse the
nonperformance on his part. The plaintiffs entered
upon the discharge of their part of the agreement in
good faith, and manufactured nearly three hundred
thousand cigars under it before they were stopped by
Watson. They were at all times able, ready, and
willing to perform their undertaking, and were only
prevented from doing so by his refusal to accept the
cigars. On the twentieth day of December they offered
to give him the time asked in his letter of December
10, that is, until January 10, 1890, in which to comply
with his agreement, but the offer was not accepted.
If he recovers in this action it must be by reason of his
own wrong, and to permit that would be most inequit-
able. It is true the claim is made in argument that
the agreement required the plaintiffs to deliver cigars
of the value of fifty-seven thousand, seven hundred
and fifty dollars; that the evidence shows that the
value of all those specified in the agreement was but
twenty thousand dollars; and, therefore, that the
plaintiffs have not performed their obligations under
this agreement. No claim of nonperformance on that
ground is made in the pleadings. The defense as to
the amount of cigars furnished in the first shipment is
that it was too large, and no claim has at any time
been made, excepting in argument, that the shipment
was too small. But the claim would not have been
well founded, had it been pleaded. The value of the
cigars of the different brands was fixed in the agree-

ment after an inspection of samples shown to Watson by R. E. Smith, and, as so fixed, is controlling. We conclude that the defendants have forfeited the deed to the land, which was placed in the hands of Runyon, and that it should be delivered to the plaintiffs.

V. The agreement provided for the delivery of a warranty deed. The one delivered does not contain general convenants of warranty, but war-

6. CONTRACT to convev real estate by warranty deed: waiver.

rants only against the acts of Santmyer. The plaintiffs ask that Watson be required to execute and deliver to the plaintiffs such a deed as the agreement requires. The evidence shows that the deed, as deposited with Runyon, was inspected by R. E. Smith before it was so deposited, and that he then made no objection to it, but accepted it. We think his conduct should be given the effect of a waiver of the right of the plaintiffs to insist upon a warranty deed.

What we have said disposes of all material questions in this case. A decree will be entered in this court in harmony with the conclusions announced. So much of the decree of the district court as is involved in the appeal of defendant is affirmed, and so much of it as is involved in the appeal of plaintiffs is REVERSED.

KINNE, J., took no part in the decision of this cause.