# BROCKBANK v. MINING COMPANY

## No. 2692

June 18, 1925.                              237 P. 337.

1. APPEAL AND ERROR—NO REVERSAL FOR ERRONEOUS ADMISSION OF
   EVIDENCE WITHOUT WHICH THERE IS SUFFICIENT COMPETENT
   EVIDENCE TO SUPPORT FINDINGS.

   Judgment will not be reversed for error not prejudicing
   losing party, such as admission of improper evidence, without
   which there is sufficient competent evidence to support court's
   findings.

2. CORPORATIONS—AGREEMENT OF CONTROLLING STOCKHOLDERS, THAT
   STOCK OF ANOTHER COMPANY ISSUED TO THEM AND MINORITY
   STOCKHOLDER FOR TRANSFER OF ALL PROPERTY SHOULD NOT BE
   PLACED ON MARKET UNTIL ISSUING COMPANY WAS FULLY
   FINANCED, HELD BINDING ON MINORITY STOCKHOLDER.

   Agreement by stockholders, contributing entire capital of
   and absolutely controlling corporation, that stock agreed to be
   issued to them and minority stockholder by another corpora-
   tion, for transfer of all property rights of former corporation
   should not be placed on market until issuing company was fully
   financed, *held* binding on transferor company and minority
   stockholder, though it did not affirmatively appear that he was
   informed of such agreement in respect to his stock.

3. PRINCIPAL AND AGENT—AGENT'S ACTS CANNOT BE NULLIFIED BY
   SUBSEQUENT REVOCATION OF POWER OF ATTORNEY.

   Power of attorney cannot be revoked, so as to nullify attor-
   ney's acts before revocation.

4. DAMAGES—"GENERAL DAMAGES" AND "SPECIAL DAMAGES" DIS-
   TINGUISHED.

   Damages necessarily resulting from wrongful act are gen-
   eral, and need not be specially pleaded, while damages which
   are natural, but not necessary, consequences of such act are
   special, and must be specially pleaded.

5. CORPORATIONS — REVERSAL OF · JUDGMENT FOR DAMAGES FROM
   DEPRECIATION IN VALUE OF STOCK BEFORE DELIVERY NOT JUSTI-
   FIED IN ABSENCE OF ALLEGATIONS AND EVIDENCE THAT PLAINTIFF
   CONTEMPLATED SELLING STOCK.

   Mere failure to promptly deliver stock certificates *held* not
   to justify reversal of judgment in stockholder's action denying
   damages from depreciation in value during time stock was
   withheld in absence of allegations, evidence, or findings that
   plaintiff contemplated selling his stock, though it was corpora-
   tion's duty to deliver stock without demand under Rev. Laws,
   sec. 1157; no special damage being pleaded.

6. COSTS—PLAINTIFF HELD ENTITLED TO ONLY GENERAL DAMAGES
   IN NOMINAL SUM, AND HENCE NOT TO COSTS.

   Plaintiff having received stock certificates, for depreciation
   in value of which before delivery he sued, without alleging or

proving that he contemplated selling stock, could recover only general damages in nominal sum, and hence was not entitled to costs.

See (1) 4 C. J. sec. 2952, p. 971, n. 58; (2, 5) 14 C. J. sec. 720, p. 488, n. 79; 14A C. J. sec. 3640, p. 1060, n. 98; (3) 2 C. J. sec. 197, p. 555, n. 23; (4) 17 C. J. sec. 305, p. 1002, n. 72; sec. 306, p. 1002, n. 78; (6) 15 C. J. sec. 46, p. 44, n. 45.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by G. M. Brockbank against the Reorganized Silver King Divide Mining Company. From a judgment for defendant, and an order denying new trial, plaintiff appeals. **Affirmed.**

*Cooke, French & Stoddard,* for Appellant:

Every stockholder is entitled to delivery of certificate evidencing ownership. Rev. Laws, 1157.

Evidence conclusively shows defendant would have refused to deliver stock because of alleged pool. Such being case, it cannot allege legal insufficiency of demand. Robinson M. Co. v. Riepe, 37 Nev. 31.

McLean v. Medicine Co., 56 N. W. 68, cannot apply because this is not action for conversion, but action on the case for damages specially alleged and proven. In that case plaintiff had possession of duly endorsed certificates and sued because company refused to enter transfer upon its books. He neither alleged nor proved special damages, and court held he could not recover without such plea and proof. In instant case Brockbank never had certificates nor any evidence of ownership because respondent refused delivery, and he could not sell without having certificates. 2 Cook on Corporations, sec. 575, holds squarely that action on the case lies against corporation for wrongful denial to stockholder of certificate, and in such action one may recover nominal damages only, "unless he proves special damages." Also, 11 C. J. 2. 5 Fletcher Corp., sec. 3453, does not hold where plaintiff has been damnified by wrongful refusal to deliver, wrongdoer can absolve himself by simply returning stock after damage has been

inflicted. Nominal damage is confined to cases where plaintiff sustained no actual damages by refusal to deliver, citing Owen v. Williams, 89 Pac. 778. That was suit for conversion to recover value of certificates alleged to have been converted. After issues joined, defendant offered and plaintiff accepted certificates and trial court allowed plaintiff only nominal damage. The cause of action being extinguished by acceptance, plaintiff could not recover value and have stock also. Instant case is not for stock or value of it, but for damages suffered by wrongful refusal to deliver. Only remedy is payment of damages. It takes no great legal acumen to distinguish between action on conversion where no special damages are claimed, and action where damages constitute cause of action.

*Wm. McKnight,* for Respondent:

Plaintiff could not speculate with market price of stock and repudiate if market fell. He could not remain silent and await vicissitudes of fluctuating market. Meyer v. Morgan, 24 Am. Rep. 621.

Assuming for sake of argument only that D. E. and L. T. Brockbank had no express authority to act as agents of plaintiff, he is still bound by doctrine of acquiescence. Curry v. Hale, 15 W. Va. 875; King v. Rea, 21 P. 1084.

Corporation is not bound to carry stock to owner. He must make demand on company or its officers. Teeple v. Hawkeye Co., 137 Iowa, 206.

Revocation of authority must be in unequivocal language, and will not be inferred if principal's conduct is not inconsistent with continuance of agency. Fuller v. Brady, 22 Ill. App. 174; Rawlings v. Nash, 83 Atl. 646.

Plaintiff's letter to defendant, even if it were revocation, could not operate retroactively and did not affect previous pooling of stock by agent. Meisher v. Cleveland Dryer Co., 11 Ill. App. 227.

Outstanding weakness of plaintiff's case is his own inaction. Action for specific delivery would have afforded speedy relief. Jessup v. R. R. Co., 188 Fed. 931.

Transfer of title on stock books is sufficient delivery and it is incumbent on plaintiff to make demand. Ellis v. Essex B. Co., 2 Pick. 243; Bank v. Richards, 74 Mo. 77.

Actual delivery is not essential to pass title. Certificate is mere evidence of title and not stock itself. State v. Pettinelli, 10 Nev. 147; State v. Leete, 16 Nev. 250.

To put corporation in default for nondelivery where corporation has not denied right thereto, demand for issuance of certificate is necessary. Teeple v. Hawkeye, supra; Lipscomb v. Condon, 56 W. Va. 416.

Without demand, which is refused, money judgment based on market value cannot be recovered. Teeple v. Hawkeye, supra.

Acceptance of delivery extinguished claim for damage. Collins v. Lowry, 47 N. W. 612; Owen v. Williams, 89 Pac. 778.

Action, whether "conversion" or "case" relates to form of proceeding, i. e., to remedy, and not to principle involved.

If there were any conversion it was of unindorsed certificates only, not shown to have value, and not of stock itself. Daggett v. Davis, 53 Mich. 35.

Special damages are not implied. They must be set forth with particularity. Treadwell v. Whittier, 22 P. 266; Buckley v. Buckley, 12 Nev. 435.

## OPINION

By the Court, COLEMAN, C. J.:

This action was brought to recover damages alleged to have been sustained by reason of the refusal of the defendant to promptly deliver to the plaintiff certificates for 10,000 shares of stock in the defendant company, to which the plaintiff claims he was entitled. From a judgment in favor of the defendant, and an order denying a motion for a new trial, an appeal was taken. The parties will be referred to as in the lower court.

It is contended that in October, 1922, the plaintiff and numerous others were the owners and holders of stock in the Homestake Mines Company, a Nevada corporation,

which held options on certain mining claims; that it, about the date mentioned, entered into an agreement with the defendant company whereby it agreed to transfer to the defendant company the options so held, in consideration of the payment of its debts, and the issuance of each of the stockholders of the Homestake Company its own stock, in an amount equal to that held in the Homestake Company; that the debts of the Homestake Company were paid and the options mentioned were transferred to the defendant company. Plaintiff further contends that shortly after the consummation of the deal, and in October, 1922, he sent his 10 certificates in the Homestake Company, aggregating 10,000 shares, to the defendant company, demanding that it issue and send to him a like number of certificates of 1,000 shares each in the defendant company; that it did issue to him such certificates, but that it refused to deliver them until some time in June, 1923; and that, by reason of the depreciation of the market value of the stock between the dates of his demand and the delivery, he was damaged in the sum alleged.

The trial court made detailed findings of fact in favor of the theory of the case as urged by the defendant company, and rendered judgment accordingly.

We will state such findings as are deemed necessary. It found that on October 17, 1922, an agreement was entered into between the Homestake Mines Company and the defendant, whereby, in consideration of the issuance to the Homestake Company of stock by the defendant company its stock to the amount of 200,000 shares, and the assuming and the payment of an indebtedness of not to exceed $5,000, the Homestake Company would transfer all of its property rights to the defendant company. The court further found:

"That it was not further, or at all, stipulated or agreed in and by said agreement or otherwise, or at all, that the then outstanding shares of stock of the said Homestake Mines Company of Nevada might be surrendered by the owners thereof, for cancellation or

exchange by reissuance or delivery to such stockholders for shares of the stock of the defendant, at the ratio of share for share, or otherwise, or at all, or that whereupon, or at all, the defendant would, on demand or otherwise, or at all, issue or deliver shares of its stock to such stockholder or stockholders of said Homestake Mines Company of Nevada, at the ratio of share for share, or otherwise or at all, or deduct the amount of its said stock, so delivered, or otherwise, or at all, to former shareholders of said Homestake Mines Company of Nevada, from the said 200,000 shares, so or at all agreed upon, between the said corporations, as a part of the consideration for said assignment or transfer of said options or agreements."

It was further found that the defendant issued and delivered its certificates of stock to the Homestake Company for 200,000 shares, and paid the indebtedness assumed; that at the time of the making of the agreement mentioned the Homestake Company had caused to be issued to the plaintiff certificates for 10,000 shares of its stock; that it was agreed between D. E. Brockbank and L. T. Brockbank that they would furnish a list of the names of all persons to whom the 200,000 shares of stock to be issued to the Homestake Company should be reissued, and that all of the stock so to be issued to the members of the Brockbank family should be held in pool until such time as the defendant company was properly financed, and that the plaintiff is a member of the Brockbank family; that on or about November 11, 1922, the defendant issued certificates of stock to the plaintiff for 10,000 shares of its stock, but that the same was not delivered because of the pool agreement. The court further found that on May 6, 1923, there was a meeting held at Reno, Nevada, attended, among others, by D. E. Brockbank, who held a power of attorney from the plaintiff which authorized the said attorney in fact to enter into a pool agreement in behalf of plaintiff for a further period of six months, and that such pool agreement was entered into, and that in pursuance thereto a

telegram was sent to certain parties in New York with a view of interesting them, wherein it was stated that such further pool agreement had been made.

It is further found that the plaintiff made no demand of the defendant for the delivery to him of stock certificates until May 16, 1923, that his certificates were delivered to the plaintiff on June 21, 1923, but that the plaintiff did not sell the same until the month of August. It is further found that at the time of the delivery of the stock to the plaintiff no assessment by the defendant upon its stock was contemplated. It is further found that the defendant at no time wrongfully withheld stock from the plaintiff.

If these findings are justified by the evidence, the order and judgment must be affirmed.

1. Many errors are assigned but we will not consider them in detail. It is said that the court erred in many instances in admitting in evidence much irrelevant and immaterial evidence. It is true, as contended, that much improper evidence is admitted, but eliminating it from consideration, there is sufficient competent evidence to support the findings of the court, and no judgment will be reversed because of error which does not prejudice the losing party.

2. The undisputed evidence in the case is to the effect that D. E. Brockbank and L. T. Brockbank, brothers of the plaintiff, contributed all of the money which went into the Homestake Company, and that they absolutely controlled it. So far as appears from the record in the case, no meeting of either the directors or the stockholders of the Homestake Company was ever held to ratify the contract made by D. E. and L. T. Brockbank in its behalf with the defendant company.

The testimony of R. L. Colburn of the defendant company as to the negotiations for the deal, which resulted in the issuance of the 200,000 shares of stock by the defendant to the Homestake Company, is that D. E. Brockbank and L. T. Brockbank went to San Francisco, where all of the negotiations were had, and that, after the terms of the agreement were reached,

the parties went to an attorney's office, where the minutes of the defendant company approving the deal were prepared. He also testified that the understanding was that none of the stock to be issued by the defendant company going to the Brockbanks should be placed upon the market until the property was fully financed.

Though it does not appear affirmatively that the plaintiff was informed that it was agreed that his stock should not be placed on the market, the agreement was nevertheless binding upon the Homestake Company, and upon him as a stockholder in that company. While the evidence is somewhat contradictory, we think all of the circumstances warrant the conclusion reached by the court.

3. Had there been no agreement in the first instance as to the selling of the Brockbank stock, we think there is enough in the case to necessitate an affirmance. The plaintiff never demanded his stock until May 16. On May 6 the meeting was held in Reno at which time the plaintiff was represented by his attorney in fact, and, as found by the court, an agreement to further pool the stock until the company was financed was made. The evidence as to this too is contradictory, but we cannot say that the court was not justified in its finding. Counsel for plaintiff says, however, that the principal is greater than the agent, and can revoke a power of attorney at any time, and that his demand for the stock on May 16 was, in effect, a revocation of such power of attorney. We are in accord with the contention as to the power of revocation with one qualification, which is that a power of attorney cannot be revoked so as to nullify the acts of an attorney if done prior to the revocation, and in this instance, the attorney having acted on May 6, the attempted revocation on May 16 did not affect what had been done prior thereto.

4-6. Counsel for the plaintiff says that pursuant to section 1157, Rev. Laws, it was the duty of the defendant to deliver the stock without a demand. Assuming, for the purpose of this case, without so deciding, that such is the law, we think the case of McLean v. Charles

Wright Medicine Co., 96 Mich. 479, 55 N. W. 68, cited
by counsel for respondent, controls this case.  Counsel
for plaintiff concedes that the case mentioned would be
an authority justifying an affirmance of the judgment,
but for the fact that the complaint pleads special
damages.  We cannot agree with the assertion that the
complaint pleads special damages.  Damages which
necessarily result from a wrongful act are general dam-
ages, and need not be specially pleaded, while damages
which are the natural, but not the necessary conse-
quences of a wrongful act, are special in their nature, and
must be specially pleaded.  Buckley v. Buckley, 12 Nev.
423, 435.  Assuming, then, that the defendant was guilty
of a wrongful act in not promptly delivering the certifi-
cates of stock to the plaintiff, and as a result he is enti-
tled to recover general damages in a nominal sum, what
facts are alleged in the complaint charging any damages
which are the natural but not the necessary consequences
of the nondelivery of the stock certificates to the plain-
tiff?  Surely the mere failure of the defendant to deliver
the stock certificates to the plaintiff did not naturally
result in damaging the plaintiff, other than nominal
damages, even though the stock did depreciate in value
during the period of nondelivery.  So far as appears from
the pleadings, the evidence, or the findings, the plaintiff
did not desire or contemplate selling his stock.  If he
had no desire to sell the stock, but to hold it in the
belief that the property would make a mine, and that
the stock would ultimately, as a result, attain great
value, surely the mere fact that he did not have pos-
session of the stock certificates (his ownership to the
stock, and rights as a stockholder being in no way ques-
tioned), no matter what reason therefor was given,
would result in no natural damage to the plaintiff.  As
we view the complaint, no special damage is pleaded.  In
this view of the case, the plaintiff having received his
stock certificates, he can recover only general damages
in a nominal sum which would not entitle him to costs
under our statute.

Other questions are discussed, but, in the view we
take of the case, it is not necessary to consider them.

Counsel for plaintiff, in his oral argument, dealt very harshly with the defendant company, attributing ulterior motives to it, and contending for the existence of certain facts reflecting upon the honesty of purpose of the defendant.   We think these statements are answered by the findings of the court, which are fully justified by the record.   In fact, this suit by the plaintiff seems to be the result of deferred consideration.   He received his stock in June, and held it until August, six or seven weeks.   Reading the entire record, we are impressed with the idea that the plaintiff did not desire to sell his stock, but contemplated holding it with the hope that the property owned by the defendant company would make a mine.

No prejudicial error appearing, it is ordered that the judgment and order appealed from be affirmed, respondent to recover its costs.