GERLACH LIVE STOCK CO. Et Al. *v.* LAXALT

No. 2792

February 5, 1930.                    284 P. 310.

*Wm. M. Kearney,* for Appellant:

*John S. Sinai,* for Respondents:

## OPINION

By the Court, SANDERS, J.:

Plaintiffs, respondents herein, sued defendant appellant to recover both actual and exemplary damages for alleged trespasses by defendant's sheep upon certain uninclosed quarter sections of mountain lands in townships 36 and 37, according to government survey, in Washoe County, in the rightful possession of plaintiffs and used as a range for the grazing of plaintiffs' cattle

during the grazing season of the year 1924. The action was tried to the court, a jury being waived by stipulation. Plaintiffs had judgment for $1,800 actual damages and for $1,000 exemplary damages. The defendant appeals from the judgment, and from an order denying and overruling his motion for a new trial.

The complaint places the legal title to the trespassed area in the Gerlach Live Stock Company, a corporation, and places the right of possession and the possession thereof in plaintiffs under a partnership agreement between the Gerlach Live Stock Company and Edward P. Waltz, as copartners engaged in the livestock business. The complaint, as one cause of action, complains of 12 complete and distinct acts of trespass, occurring on and between October 15, 1924, and November 28, 1924. The damages claimed are alleged to have been occasioned by the willful, malicious, wrongful, and unlawful herding and grazing of 4,400 head of sheep, divided into two bands, of 2,200 each, upon the lands in question, whereby the grasses, herbage, and browse growing thereon and the waters flowing thereon were destroyed and polluted, and that by reason of defendant's trespasses plaintiffs' cattle were driven off their accustomed range onto lands whereon there was but little or no water, and but little and inferior pasturage, and that as a result plaintiffs' cattle became emaciated, poor, and deteriorated in value, to the plaintiffs' injury and damage.

The complaint also alleges that, at the time of each act of trespass, plaintiffs' representative and employee notified the defendant's herders in charge of the sheep that they were being herded and grazed upon plaintiffs' lands, and ordered the herders to drive the sheep therefrom and to cease depasturing the same and polluting the waters thereon. It is alleged that the herders refused to remove the sheep and continued to depasture the land. It is also alleged that during the month of November, 1924, plaintiff Edward P. Waltz informed the defendant personally that his sheep were being herded upon plaintiffs' lands, and that the defendant

promised to remove the sheep, which promise he failed to keep. Plaintiffs demanded judgment for general damages in the sum of $2,500, and exemplary damages for the sum of $5,000.

The above and other allegations of the complaint were denied by the answer of the defendant, and for further defense the defendant alleged that he had no knowledge of the trespasses complained of, and that in November, 1924, the plaintiff Waltz represented to him that he was damaged in the sum of $250, and that the defendant said to the plaintiff Waltz that, when he became satisfied that the sheep were being herded and grazed upon plaintiffs' land, he would pay him the sum of $250, as demanded, in order to avoid litigation.

After an extended trial the court rendered its decision in writing, in which it was directed that plaintiff have judgment against the defendant for the sum of $1,800 actual damages and for the sum of $1,000 exemplary damages, and denied the defendant a new trial. Defendant appellant makes numerous assignments of error, which we shall consider in the following groups: First, the admission of evidence which defendant claims shows special damages, the same not having been pleaded; second, the insufficiency of the evidence to support the judgment.

A number of statutes, both early and late, exist in this state, which purport to regulate the driving, herding, and grazing of live stock, particularly sheep, upon the lands and possessory claims of other persons. These statutes make the owner or agent of the owner violating the provisions of the acts liable for damages, and in one instance liable for actual and exemplary damages. Stats. 1917, p. 124, c. 81. The plaintiffs in this case, however, do not seek to recover damages for the violation of any statute, but seem to predicate their cause of action upon the common-law principle that, where there is a willful trespass, the trespasser will be liable for compensation, as damages, for all loss actually sustained as a direct result of the trespass, and, if the trespass is committed willfully, wantonly,

or maliciously, exemplary damages may be recovered. 3 C. J. 149.

In this, as in any other case of tort, exemplary damages may be allowed for the purpose of example and punishment, in addition to the compensation. 1 Sutherland on Damages, 721, 722. It is clear from the allegations of the complaint in this case that the defendant, on the dates specified therein, herded and grazed his sheep upon plaintiffs' lands, whereby the grasses, herbage, and browse growing thereon were eaten up and destroyed by the defendant's sheep, and, as a direct result of the destruction of the grasses, herbage, and browse, plaintiffs' cattle were driven off their range onto lands where there was no water, or but little water, and but little pasture of inferior quality, whereby the cattle, thus deprived of the pasturage which they would have consumed, became emaciated, poor, and deteriorated in value, to plaintiffs' injury and damage.

The record discloses that the trespassed area consisted of about 960 acres of uninclosed, disconnected tracts of mountain land, scattered through a much larger area of public lands of the United States, in townships 36 and 37, and uninclosed privately owned lands of others, upon which public lands plaintiffs' and defendant's cattle and sheep, in common with those of other persons, had the legal privilege to pasture and graze, and it appears from the evidence that persons other than the defendant herded and grazed their cattle and sheep upon the area in question during the grazing season of 1924.

At the time of the acts complained of the defendant was a resident of California, engaged in the sheep industry, and herded and grazed his sheep upon the public domain surrounding the trespassed area in Washoe County, Nevada. It appears that the plaintiffs and others owned extensive tracts of cultivated land situated some miles distant and below the upper or mountain land. It appears to have been the habit of plaintiffs to turn loose their cattle at their so-called ranches at the beginning of the grazing season, knowing and expecting, from the situation and character of the country and the

habits of cattle, that they would drift and range toward the upper or mountain lands, and would graze upon the area in question, including the lands of plaintiffs, whereon there was water which had its source in springs situated in the several canyons on plaintiffs' land, which springs, the evidence tends to show, was the only source of supply of water available to the live stock of plaintiffs and others privileged to graze their live stock upon the area in question.

It appears that the grazing season for the year 1924 extended from early spring until on or about the 1st of October. It also appears that on October 15, 1924, plaintiffs' manager or foreman, one William Parsons, discovered a band of sheep, in charge of defendant's herders, on what he considered to be plaintiffs' land, at or near one of the springs of plaintiffs. Parsons testified that he informed the herder and camp tender in charge of the sheep that they were being herded upon plaintiffs' land, and ordered them to remove the sheep therefrom, which they refused to do. He also testified that at the time an altercation arose between him and the herder, in which the herder threatened his life and assaulted him with rocks, but there was no battery. Upon the trial one of this herder's companions, when asked the question where the herder was who made the assault, replied that he was in "the crazy house." The men in charge of the sheep were illiterate foreigners, and the herder who committed the assault shortly thereafter became demented and was confined in an asylum.

Within a few days thereafter Parsons returned to the scene and again ordered the herder to remove the sheep, which he refused to do. And thereafter he notified the herder in charge of the other band of sheep that they were being herded upon plaintiffs' land, and ordered him to remove the sheep, which he refused to do. The proof also shows that in November, 1924, plaintiff Waltz orally told the defendant, at the town of Gerlach, in Washoe County, of the acts of trespass committed and continued to be committed upon

plaintiffs' lands by his herders, and that the defendant promised to remove the sheep, which he did not do.

It appears that at the time of the alleged trespasses plaintiffs had prior thereto turned loose about 700 head of cattle from their ranches to drift and graze upon the area in question during the grazing season of 1924. It is conceded that the grazing season that year was extremely dry, but according to the evidence of plaintiffs there was sufficient pasturage upon the area in question to sustain plaintiffs' cattle for a period of about 60 days. According to the testimony of the witness Parsons, 500 head of plaintiffs' cattle drifted and ranged back toward one of plaintiffs' ranches, called the Bear ranch. He also testified that they arrived at the ranch in a poor and weakened condition, and to sustain them it became necessary to turn the cattle upon the hay fields, where they were kept for about 30 days, and that when they had depastured the fields they were fed hay for a period of about 30 days.

The testimony of Parsons and the other witnesses in the case on behalf of plaintiffs, as well as defendant, took a very wide range. The record discloses that the parties were given by the trial judge almost unlimited latitude in the introduction of evidence. In fairness to the trial court, it is proper that we quote a portion of his decision upon the merits of the case, bearing upon the question of actual damages. It reads as follows:

"The only question the court has found difficulty in determining is the usual one of just what the actual damage has amounted to; and after considering all of the testimony thoughtfully, the court believes that the testimony of Parsons comes closer to fixing this damage than that of the other witnesses, although there is not a great deal of difference in the amount when all of the testimony is considered. Parsons testified that 500 head of cattle grazed upon the area trespassed upon by defendant's sheep, the cattle, of course, having been driven therefrom; that it was necessary to feed the 500 head of cattle from 10 to 12 pounds of hay per day

each, and that hay was at the time worth from $12 to $14 per ton. This would fix the actual damage at approximately $1,800, which was at the expense of plaintiffs, and necessarily incurred by reason of the trespasses alleged."

The record discloses that upon the trial of the case counsel for defendant objected continuously to the introduction of any testimony upon the question of the price and amount of hay fed plaintiffs' cattle, upon the ground that it was not within the issues, and that the market value of the hay constituted special damages, and, not having been pleaded, the testimony of the witness Parsons and others, made the basis of the court's estimate of actual damages, was inadmissible and prejudicial.

■ We are in accord with the contention that the value of the hay constituted special damages. "Special, as distinguished from general, damages are those which are the actual, but not the necessary, consequence of the act complained of." Brockbank v. Mining Co., 49 Nev. 80, 237 P. 377; 17 C. J. 715. It will be observed from the complaint that it is alleged, in substance, that, as the result of the alleged trespasses by the defendant's sheep on plaintiffs' land, the grass, herbage, and browse thereon was consumed and destroyed, and the waters flowing thereon were polluted, and that, by reason thereof, plaintiffs' cattle were driven off their accustomed range onto land where there was but little or no water, and where there was pasture of inferior quality, whereby plaintiffs' cattle became emaciated, poor, and decreased in value, to plaintiffs' injury and damages. There is nothing in this allegation of the complaint to apprise defendant that, by reason of plaintiffs' cattle being driven off the land onto other land, where there was little or no water and pasture of inferior quality, it was necessary to feed them hay to sustain them.

■ We are of opinion that the amount and market value of the hay, upon which the court measured the plaintiffs' actual damages, constituted special damages, and, not having been pleaded, the evidence of the value of the hay was inadmissible and prejudicial. Pyramid

Land & Stock Co. v. Pierce, 30 Nev. 237, 95 P. 210; Lessman v. Anschustigui, 37 Idaho, 127, 215 P. 460.

■ It is insisted in argument that, even though the court was in error in deciding and holding that the market value of the hay fed plaintiffs' 500 head of cattle was a legitimate measure by which plaintiffs' actual damages could be estimated, nevertheless there was sufficient evidence to support the finding that the $1,800 was the value of the grass, herbage, and browse consumed and destroyed by the defendant's sheep. The conclusive answer to this contention is that the evidence of the value of the hay, upon which the finding mentioned could only have been predicated, does not show the value of the pasturage destroyed and consumed by the defendant's sheep. Boggs v. Seawell, 35 Idaho, 132, 205 P. 262.

■■ It does not follow that, because of our opinion that the evidence as to the amount and market value of the hay constituted special damages and, not having been specially pleaded, was inadmissible and prejudicial, plaintiffs, under the circumstances, are not entitled to recover exemplary damages. Where the failure to recover actual damages is due solely to defect in the pleadings, or in the verdict, exemplary damages may be recovered. Favorite v. Cottrill, 62 Mo. App. 119; Courtney v. Kneib, 131 Mo. App. 204, 110 S. W. 665. The proof shows that the defendant's herders and camp tenders in charge of the defendant's sheep, over the repeated protests of plaintiffs' agent or superintendent, continued to herd the sheep upon plaintiffs' land; that at the time of the trespasses complained of the plaintiffs' agent or superintendent notified the defendant's herders and camp tenders that the sheep were being herded and grazed upon plaintiffs' land; that he ordered the parties in charge of the sheep to remove the sheep, and they refused to do so, and continued, after said protests and orders, to depasture the land. Under these circumstances, the trespasses were willfully and wantonly committed. Consequently plaintiffs are entitled to recover exemplary damages.

Cosgriff v. Miller, 10 Wyo. 190, 68 P. 206, 98 Am. St. Rep. 977; 1 Sedgwick on Damages (9th ed.), sec. 363; 3 C. J. 149.

Upon consideration of all of the testimony, it is ordered that, in case plaintiffs file with the clerk of the court below, within 15 days after receipt of copy hereof, a written statement to the effect that the judgment appealed from be modified, so as to strike out that portion of the judgment awarding plaintiffs $1,800 as actual damages, the judgment be affirmed. And, on failure so to do, it is ordered that the judgment be reversed in all things, with costs.

COLEMAN, J.: I concur.

DUCKER, C. J., dissenting:

I am of the opinion that the judgment should be affirmed in all respects, and therefore dissent from the foregoing order.