LONGINOTTI *v.* RHODES.

4-8867 220 S. W. 2d 812

Opinion delivered May 30, 1949.

*Hebert & Dobbs,* for appellant.

*McMath, Whittington, Leatherman* and *Schoenfeld,* for appellee.

GRIFFIN SMITH, Chief Justice. In September 1946 Louis Longinotti, Sr., and G. H. Britt, were partners conducting Citizens Club Booky—a place where gambling contracts were made. Longinotti's son, Louis Junior, was an employe. T. L. Rhodes, 53 years of age, operated a grocery store and sub-bakery. He patronized the Club on September 25th and engaged in a bet argument with the elder Longinotti. The younger Longinotti, working within a few feet from where the verbal controversy took place, projected himself into the dispute by

bodily assaulting Rhodes, who sustained severe facial injuries. In a proceeding for damages and punitive assessment the jury returned a verdict for $4,750 without designating what part of the award was to compensate actual injury and what was apportionable to the exemplary demands.

In this appeal the partners contend (1) that a plea of *res judicata* should have been sustained; (2) Longinotti, Jr., in assaulting Rhodes, acted beyond the scope of his employment; (3) the Court erred in giving plaintiff's Instruction No. 3, which allowed compensation for future suffering on account of the injuries; (4) the verdict is excessive.

The first assignment is predicated upon an incomplete trial October 27, 1947, and the Court's action in granting a nonsuit after having stated that the cause would be dismissed as to the elder Longinotti and Britt for want of evidence. A complete transcript of discussions in chambers discloses that it was the Court's purpose to grant the nonsuit, even though the Judge had formerly expressed a purpose to dismiss. This was not an abuse of discretion, and the point must be decided against appellants.

The evidence was sufficient to sustain appellee's contention that young Longinotti was employed by his father and Britt. In fact, each admitted the relationship. The only question in this connection is scope of the employe's duties. Generally speaking, he was a clerk, sometimes working at a desk adjusting accounts, but at times mixing with patrons. Just before the assault on appellee, young Longinotti was "behind the counter", a distance of several feet from where the elder Longinotti and Rhodes were engaged in a dispute. As one witness expressed it, young Longinotti was "at the low counter behind the payoff on horses, where he worked all the time", and the controversy between the senior Longinotti and Rhodes was based on Rhode's contention that he (Rhodes) had bet on a designated entry.

Although testimony regarding the physical encounter is in sharp dispute, there was substantial basis for a

jury finding that Rhodes, when informed that his horse had not won, told the elder Longinotti he was a 'damned rascal'. The accused man walked to a position near his son, who to reach Rhodes vaulted inpediments and struck right and left. He was a trained boxer, an instructor in an athletic organization, and had no difficulty in severely punishing Rhodes, who retreated across the room and leaned or fell against a so-called catwalk. From a standpoint of substantiality, the evidence was sufficient to show an unnecessary assault viciously pursued, and executed in the interest of the assailant's father in circumstances from which the jury could conclude that the action was concurred in.

The elder Longinotti testified that instructions had been given to call the police in case arguments with patrons occurred, but facts were shown from which the jury had a right to believe that young Longinotti, an expert fighter, was at least a "bouncer's" relay, and with approval of the two partners was expected to handle emergency disputes.

Instruction No. 3 told the jury that if it should find for the plaintiff there was a duty to "consider" whether the injured man was likely to suffer in the future from effects of the wounds. It is insisted there was no evidence showing a probability of future pain or impairment, hence the instruction was abstract.

There was testimony showing impairment that had continued from the attack until trial, and in Dr. Reed's opinion future suffering on a gradually declining scale could be expected. This testimony, considered in connection with appellee's description of his injuries and the after-effects, justified the instruction.

While the jury's award of $4,750 appears to be rather liberal, there were aggravating circumstances that place the appellants in an indefensible position. In the first place, treating the jury's verdict as a finding that the assault was unprovoked—a conclusion amply supported —the force employed was wholly unwarranted. Dr. Reed described head injuries as ". . . a deep stellar laceration below the left eye, [involving] a contusion with

a sub-conjunctival hemorrhage''. In the layman's language, ''flesh of the left cheek was torn from the center, and then torn out from that center to lines extending in many directions, exposing the antrum—one of the sinuses'', and leaving scars. A large number of stitches [some said twelve] were required to close the wound, which had bled profusely. Bandages were not removed for seventeen days, and the left eye ''watered'' until January. Rhodes also reported to Dr. Reed (but not until three weeks after the encounter) that his back had been bruised, resulting in severe pains in extremities. Anti-pain medicines were prescribed.

Appellee undertook to emphasize his damages by showing that the nature of his injuries required constant attention by his wife, with the result that the grocery store and sub-bakery were closed, and later sold at a loss. The Court properly excluded this testimony in the form it was offered.

Appellants argue that the size of the verdict shows conclusively that something was allowed as exemplary damages. Our cases hold that, as a predicate for exemplary awards, actual damages must be found. *Kroger Grocery & Baking Co.* v. *Reeves*, 210 Ark. 178, 194 S. W. 2d 876. What the rule rejects is punishment where actual injury has not been shown. In the case at bar serious trauma is undisputed and was sufficient for substantial recovery. Appellants, through a requested verdict apportionment, could have separated the elements, but they did not ask that this be done.

Affirmed.