Argued and submitted May 4, 1982, reversed and remanded January 18, petition for rehearing denied February 9, 1983

# REXNORD, INC. et al,
*Petitioners on review,*

*v.*

# FERRIS et al,
*Respondents on review.*

## (CA 19104, SC 28419)

657 P2d 673

Malcolm E. Wheeler, Los Angeles, California, argued the cause for petitioners on review. With him on the briefs and the petition were Hughes, Hubbard & Reed, Los Angeles, California, and Fredric A. Yerke, James N. Westwood, and Miller, Nash, Yerke, Wiener & Hager, Portland.

William E. Hurley, Portland, argued the cause for respondent on review. On the brief were Michael B. Wallstein, and Bernard, Hurley, Crawford & Kneeland, Portland.

Before Denecke,** Chief Justice, and Lent, Linde, Peterson, Tanzer,*** and Campbell, Justices.

PETERSON, J.

—————

** Denecke, C. J., retired June 30, 1982.

*** Tanzer, J., resigned December 31, 1982.

## PETERSON, J.

The plaintiffs filed a complaint against the defendants seeking injunctive relief, compensatory damages and punitive damages.[1] The trial court, sitting without a jury, enjoined the defendants and awarded general damages. Although the trial court found that tortious conduct had been proved of a nature to support an award of punitive damages of $35,000, the court refused to award punitive damages, and instead entered a conclusion of law that "[t]his court is not authorized to award punitive damages, for the reason that a party who seeks injunctive relief cannot also obtain from the same court an award of punitive damages." The plaintiffs appealed, claiming that the scope of the injunction was too narrow and that punitive damages should have been awarded. The Court of Appeals affirmed, 55 Or App 127, 637 P2d 619 (1981).

On review in this court, the plaintiffs have raised only the punitive damages issue. This court has upheld punitive damage awards in actions at law in a variety of situations. *See* cases cited in 1 Committee on Continuing Legal Education, Oregon State Bar, Damages ch 4 (rev ed 1980). *Pedah Company v. Hunt*, 265 Or 433, 509 P2d 1197 (1973), however, held that punitive damages are not recoverable in an equity suit because "the allowance of punitive damages by a court sitting in equity, without a jury, is inconsistent with a court in equity doing justice between the litigants."[2] We granted review to again consider the *Pedah* holding.

---

[1] The complaint contained claims that the defendants engaged in unfair competition; converted plaintiffs' trade secrets, confidential information, plans, drawings, schematics and writings; and interfered with plaintiffs' contractual relations. On all such claims the plaintiffs sought injunctive relief and damages. The damage allegations were that the defendants "acted maliciously and were guilty of a wanton disregard of the rights of plaintiffs." Plaintiffs sought general damages and "exemplary and punitive damages." Defendants have not questioned the sufficiency of the evidence to support the trial court conclusion that punitive damages were awardable to the plaintiffs.

[2] The *Pedah* opinion states:

"The majority of jurisdictions which have considered the question have concluded that punitive damages are not recoverable in a court of equity. Annot., 48 ALR2d 947. Justifications commonly relied upon for this rule include:

"* * * (1) a court of equity, in the absence of statutory authorization, is without power to award punitive damages; (2) punitive damages are

ORCP 24A permits the joinder of legal and equitable claims. It provides:

"A plaintiff may join in a complaint, either as independent or as alternate claims, as many claims, legal or equitable, as the plaintiff has against an opposing party."

■ In their complaint, the plaintiffs alleged that they were entitled to recover general and punitive damages flowing from the defendants' tortious conduct. The plaintiffs proved their cause of action. Aside from constitutional rights to jury trial discussed below, we see no impediment to the award of punitive damages where tortious conduct which would otherwise support an award of punitive damages has been established, even though injunctive relief is sought and granted in the same action. ORCP 24A expressly permits the joinder of such claims. Although procedural problems may arise akin to those existing before the Oregon Rules of Civil Procedure became effective, the joinder of legal and equitable claims is permissible, including claims for punitive damages.

*Pedah* holds that a court of equity cannot award punitive damages incident to the granting of injunctive relief. It is not clear whether the *Pedah* holding is limited to an injunction case in which the foundation for the recovery of punitive damages has not otherwise been proved. Inasmuch as the joinder of legal and equitable claims is and was expressly permitted by ORCP 24A and its predecessor, ORS 16.221(1), where a right to punitive damages has been pleaded and proved, the preferable procedure is to adjudicate fully the dispute in one action.

■ We hold that if the plaintiff pleads a claim for relief which, if proved, would permit an award of punitive

---

inconsistent with the principle that equity will award only what is due *ex aequo et bono* —in justice and fairness—without regard to the reprehensibility of defendant's conduct; (3) an aggrieved party by suing for equitable relief waives all claims to punitive damages; and (4) an award of punitive damages lies within the exclusive province of a jury and usurpation of that function by the chancellor would deprive defendant of his state-guaranteed constitutional right to a jury trial before punishment. * * *' Note, 63 Colum L Rev 175, 176-77 (1963) (Citations omitted.)" *Pedah Company v. Hunt,* 265 Or 433, 435, 509 P2d 1197 (1973).

damages; if the plaintiff proves his right to recover punitive damages; and if the court finds that a right to recover punitive damages has been established, the joinder of a request for additional injunctive relief does not prevent a court from awarding both punitive damages and injunctive relief. To the extent that *Pedah* is inconsistent with this rule, it is overruled.[3]

That does not end the inquiry, however. The defendants assert that they were entitled to a jury trial on the punitive damage claim. Article I, section 17, of the Oregon Constitution provides:

"In all civil cases the right of Trial by Jury shall remain inviolate."

Article VII, section 3, of the Oregon Constitution provides:

"In actions at law, where the value and controversy shall exceed $200, the right of trial by jury shall be preserved * * *."

Under the law in effect when these constitutional provisions became effective, a claim for punitive damages would have been asserted in a civil action at law.

The plaintiffs assert that the defendants waived their right to a jury trial, arguing:

"In the instant case, defendants allowed the punitive damages issue to be decided by the trial court, demanding no jury and arguing only that the court could not award both injunctive relief and punitive damages in one proceeding. That argument, which the Court of Appeals has implicitly and necessarily rejected in its opinion, was the basis of the trial court's ruling. Defendants did not raise the issue of entitlement to a jury, if they can accurately be said to have raised it at all, until the appellate level, *after* the trial court had made its factual findings against them and *after* the court had determined that a $35,000 award would be appropriate." (Emphasis in original.)

---

[3] *Pedah Company v. Hunt, supra* note 2, may well be completely distinguishable. This court viewed that case as being one in which the court was sitting as a "court of equity." We take that arguably to mean that the primary relief sought by way of the litigation there prosecuted was cognizable only on what this court was then wont to call the "equity side" of the court. As reviewed in the text and footnote 1 herein, the case at bar may as well be regarded as a cause in tort in which injunctive relief is sought in addition to damages.

This case traced an unusual path in the trial court. Evidence was first produced at a hearing on a motion for a temporary restraining order. After the hearing the parties entered into a stipulation which was approved by the court and which provided:

"It is hereby stipulated between plaintiffs and defendants through their attorneys that the hearing on plaintiffs' motion for *preliminary* injunction held by this court on July 14, 15, and 16, 1980, shall instead be deemed, treated and regarded for all purposes as a hearing on a *permanent* injunction, reserving for trial or other disposition at a later date any other issues in the case." (Emphasis in original.)

The record shows this colloquy at a hearing on August 27, 1980. The plaintiffs' attorney stated:

"The remaining matter: * * * is the timing on the questions of compensatory and punitive damages, and where we go from here with respect to those.

"THE COURT: I haven't given that any thought, Counsel. I appreciate your suggestions.

"MR. YERKE [plaintiffs' attorney]: Well, I don't think at this late hour there is any point in going into it in detail. But I think our feeling would be that, with respect to compensatory damages, we would accept the figures that are set forth in the record by Mr. Hurley [defendants' attorney], indicating that the net profits that were actually realized by the defendants as a result of the manufacture of the six parts in question totaled, I believe, $275. And we would have no objection to the compensatory damages being entered for that amount.

"However, as to the punitive damages, — and this is especially now in view of some of the attitudes which I inferred from the Court's remarks, that there should be a substantial award of punitive damages; and especially because of the fact that there has been wanton disregard of social obligations here.

"And we would submit to the Court — and perhaps this isn't the time to submit it on a basis for a decision — but we would submit that if we are not going to get the relief that we requested in paragraph three, that the punitive damages should compensate us for the out-of-pocket expenses that have been involved in bringing this litigation, and also an award of reasonable attorneys' fees.

"THE COURT: All right, I understand, Mr. Yerke. Why don't we do this? Let me reconsider the position of the injunctive relief; make a decision on that; and then we will take up the points you raise sequentially. And, hopefully, I will be able to give you a finalized decree on the injunction by next week."

Thereafter, the plaintiffs submitted a memorandum in support of their punitive damage claim. The record suggests that the defendants filed a memorandum on the punitive damages question, but we find none in the file. There was no motion to empanel a jury to decide the damage questions. We find nothing in the record indicating that the defendants objected to the award of punitive damages other than on the *Pedah* premise that punitive damages are not recoverable when injunctive relief is sought. The defendants never objected to the award of punitive damages or compensatory damages on the ground that they were entitled to have a jury decide that question.

There was a final hearing on November 6, 1980, at which the trial court stated:

"I further find that the imposition of punitive damages is not only appropriate in this case but it would deter the defendants and others from such conduct.

"I say this recognizing as Mr. Hurley has said that the Oregon Courts disfavored punitive damages, and I personally disfavor punitive damages, but I think in this type of case, a trade secret type of case, that the more I dwelt on the subject I adopt the reasoning of Mr. Wheeler [one of plaintiffs' attorneys] that punitive damages uniquely should aid the protection of the plaintiff's trade secrets.

"In my opinion the amount of punitive damages to achieve this objective is the sum of $35,000.

"On the question of whether or not I'm authorized to issue punitive damages, I conclude that the trial court is not authorized in this type of case to award punitive damages, and I cannot add much to what has been submitted in the defendant's brief on that subject except a brief observation.

"The Supreme Court has clearly taken the position that a trial court does not have the power under the *[sic]* prior to the adoption of the new rules of civil procedure. I'm not at all confident as to how an appellate court will review this

question, but in my mind I think that the substantive distinctions have been maintained and that a party who seeks injunctive relief in court in my interpretation is not entitled to an award of punitive damages and that will be the order of the Court."

A judgment was entered on the following day. It contains these findings followed by a conclusion of law.

"3. The imposition of punitive damages against these defendants would deter the defendants and others from engaging in similar conduct in the future. The imposition of punitive damages also is appropriate, in that the defendants' conduct was sufficiently arbitrary and unconscionable to constitute a grievous violation of societal interests.

"4. If the court is authorized to award punitive damages against defendants and in favor of plaintiffs, the appropriate amount of such damages would be $35,000.

"Based upon the foregoing findings of fact, the court does hereby make and enter the following:

## "CONCLUSIONS OF LAW

"1. Plaintiffs are entitled to judgment against all defendants in the sum of $275 as compensatory damages.

"2. This court is not authorized to award punitive damages, for the reason that a party who seeks injunctive relief cannot also obtain from the same court an award of punitive damages.

"* * * * *."

ORCP 51C provides:

"The trial of all issues of fact shall be by jury unless:

"C.(1) The parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial without a jury; or

"C.(2) The court, upon motion of a party or on its own initiative, finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of this state."

The Court of Appeals held that the defendants had not waived their right to a jury trial, saying:

"* * * Under that rule [ORCP 51C(1)], 'consent' requires *affirmative* action by a stipulation. The stipulation of the

parties did not constitute consent to a trial without a jury. The words of the stipulation, "* * * reserving for trial or other disposition at a later date any other issues in the case,' cannot by any reading be interpreted to constitute a consent by the defendant to try the punitive damage issue without a jury." (Emphasis in original.) 55 Or App at 137.

ORCP 51C(1) resembles its predecessor, ORS 17.035. Before its repeal, ORS 17.035 provided:

"Trial by jury may be waived by the several parties to an issue of fact, in actions on contract, and with the assent of the court in other actions, in the manner following:

(1) By failing to appear at the trial.

(2) By written consent, in person or by attorney, filed with the clerk.

(3) By oral consent in open court, entered in the minutes." ORS 17.035 (Repealed 1977).

Both ORCP 51C(1) and ORS 17.035 provide for trial by jury of jury triable issues of fact unless there is either a written stipulation or an open court oral stipulation consenting to trial without a jury. In view of the similarity between ORCP 51C and ORS 17.035, our previous decisions are relevant on the question of whether the defendants waived their right to a jury trial.

In *Olson v. Roop,* 255 Or 368, 467 P2d 437 (1970), the plaintiff builder filed a suit in equity to foreclose a mechanic's lien for labor and materials furnished for the construction of a house for the defendants. At the completion of the plaintiff's case, the defendants moved for a nonsuit. The motion was denied and the case proceeded to judgment. At no time did defendants request a jury trial. The trial court denied the lien, but entered a judgment for the plaintiff for items for which the court found that no payment had been made. The defendants appealed, claiming that once the court denied the lien, no equitable jurisdiction remained, and they were entitled to a jury trial on the plaintiff's claim for a money judgment. This court held that the defendants had waived their right to a jury trial, stating:

"* * * We see nothing in defendants' motion which apprises the trial court that defendants were objecting to the court's authority to determine all issues because of the

lack of equitable cognizance and a jury trial. One of the issues under the pleadings was whether defendants were indebted to plaintiff. After the motion was denied, defendants proceeded to submit their evidence on the issues without further objection. The following language from *Ward v. Town Tavern et al, supra,* [194 Or 1, 228 P2d 216 (1951),] is particularly appropriate:

> "* * * Notwithstanding the fact that the defendant's motion deemed the lien invalid, it did not ask that the cause be transferred to the law side of the court and that it be tried from there on as a law action. We add that after defendant had become satisfied from the evidence that the lien was invalid, it did not object to the jurisdiction of equity over the remaining phases of the controversy.' 191 Or at 38.
>
> "* * * * *.

"We hold that the defendants waived the lack of equitable cognizance and a jury trial. * * *" 255 Or at 372-73.

*Trans. Equip. Rentals v. Ore. Auto. Ins.,* 257 Or 288, 478 P2d 620 (1970), is to the same effect. There, plaintiff filed an action at law on an insurance binder. Thereafter, an amended complaint was filed seeking equitable relief, reformation. Trial commenced on the amended complaint. The opinion states that "[i]t was apparently assumed by both the parties and the court that the amended complaint stated a cause of suit in equity." 257 Or at 291. During trial, plaintiff filed a second amended complaint which converted the claim into an action at law.

After the plaintiff had rested, the defendant did not move to transfer the case to the law side of the court and did not demand a jury. After entry of judgment for the plaintiff, the defendant appealed, claiming that it was wrongfully denied a jury trial. In holding that the defendant had waived its right to a jury trial, the court stated:

> "The completion of the plaintiff's case in chief has been firmly established as the critical point at which the defendant must finally protect his right to a jury trial or be deemed to have consented to submission of all issues to the court sitting without a jury. See *Olson v. Roop,* 255 Or 368, 467 P2d 437, 438 (1970), and cases there cited. This rule is usually applied when the plaintiff has pleaded but failed to prove a right to equitable relief. It is equally applicable here where the complaint was amended during plaintiff's case in

chief resulting in the failure either to plead or prove a cause of suit in equity. We do not agree that because this case was tried 'in a somewhat casual manner' and because the trial judge may have still considered, even after the second amended complaint was filed, that there were both legal and equitable issues to try, that the defendant was excused from adequately protecting its right to a jury trial at every appropriate stage of the proceeding." (Footnote omitted.) 257 Or at 292-93.

*Accord Schlegel v. Doran,* 260 Or 270, 277-78, 490 P2d 163 (1971); *See also Winkleman v. Ore.-Wash. Plywood Co.,* 240 Or 1, 10, 399 P2d 402 (1965).

■ In the case at bar, defendants never claimed that they were entitled to a jury trial on the punitive damage claim. The only objection that the defendants made to the award of punitive damages was the claim that a court sitting in equity could not award punitive damages in an injunction case. In their briefs, the defendants have not cited ORCP 51C. The cases cited and discussed above establish that a party can waive a right to jury trial by failure timely to assert the right, even where an applicable statute would at first blush seem to require "affirmative" action.

■ Because of the similarity between ORCP 51C and its predecessor, ORS 17.035, because of our previous decisions, and because a party should not be able to insist upon a jury trial after a case has been submitted to the court for decision without objection, we hold that the defendants consented to a court trial on the punitive damage claims.

This is the first case in which we have considered the right to a jury trial in a case governed by the Oregon Rules of Civil Procedure involving both substantive legal and equitable claims. Because the trial court made appropriate findings for the punitive damage issues, we need not remand for further proceedings to determine the amount of the punitive damages.[4] We commend the trial judge for

---

[4] As to the order of trial, under the new Rules of Civil Procedures, Professor Frederic R. Merrill states:

"ORS 16.460(2), which authorized assertion of equitable defenses in legal action and equitable matters in replies in actions at law, directed that the equitable matters be tried first. The rules supersede this provision and

deciding the question of fact as he did, thus avoiding the necessity of a second trial on the punitive damage claim.

Accordingly, we reverse the Court of Appeals and remand the case to the trial court for the entry of a judgment which includes an award of $35,000 in punitive damages.

Reversed and remanded for entry of judgment.

---

contain no mechanical rules governing the order of trial in mixed law and equity cases.

"The trial judge has discretion to handle such cases in the most expeditious and convenient way. Actually, in most cases this will still involve having the court pass on the equitable defense first. However, some care is necessary in order of trial in mixed law and equity cases because of the constitutional right to jury trial. If there are overlapping factual issues between a legal claim and an equitable defense (e.g., suit to recover damages on a contract with a defense of fraud), having the court pass on the defense first would settle those factual issues and bind the jury. If under the historical test the plaintiff actually would have been able to maintain an action at law and have the jury pass on those factual issues, the result may be a denial of the right to jury trial. See *Beacon Theatres v. Westover*, 359 U.S. 500 (1959). Another example would be a case where the plaintiff seeks a combination of legal and equitable relief, with common fact questions involved in all claims. See *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962). The question of order of trial should not be allowed to obscure the question of right to jury trial." F. Merrill, *Abolishing Procedural Distinctions Between Actions at Law and Suits in Equity; Right to Jury Trial—ORCP 2,* in Oregon Law Institute, 1980 Oregon Civil Procedure Rules 227 (1979).

In some cases, the preferable procedure will be to try the substantive legal issues first, particularly if the decision on such issues will resolve any common issue involved in the equitable claims. *See, e.g., Bruckman v. Hollzer,* 152 F2d 730, 731-32 (9th Cir 1946). *See generally* 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice §§ 38.11-.19 (2d ed 1982).

This holding is not intended to restrict a court of equity from affording a party the relief to which the party is entitled by way of equitable compensation or damages when equitable relief is, for some reason, impossible or when damages are incidental to the equitable relief sought. *See Wittick v. Miles,* 274 Or 1, 6-7, 545 P2d 121 (1976).