Nick NABOURS, et ux., Petitioners,

v.

LONGVIEW SAVINGS & LOAN ASSO-
CIATION and Jerry W. Hill,
Substitute Trustee, Respondents.

No. C–3476.

Supreme Court of Texas.

July 17, 1985.

Rehearing Denied Jan. 8, 1986.

Roberts Harbour Law Firm, Earl Rob-
erts, Jr., Longview, for petitioners.

Kenneth Ross, Longview, for respon-
dents.

GONZALEZ, Justice.

This controversy arose when Metropoli-
tan Savings & Loan Association (now Long-
view Savings & Loan Association) sought

to foreclose on a vendor's lien it held on the Nabours' home. The Nabours sued to prevent the foreclosure and to recover damages. The jury found that Longview had waived its right to foreclose, that it had made false statements in connection with the foreclosure notices, and that it acted with malice. However, the jury found that the Nabours had suffered no actual damages. They did award punitive damages and attorney's fees. The court of appeals, with one justice dissenting, affirmed the granting of the injunction by the trial court, but it reversed the judgment of the trial court as to the punitive damages and attorney's fees. 673 S.W.2d 357 (Tex.App. 1984). We affirm the judgment of the court of appeals.

## FACTS

The Nabours purchased a home from Alfred Burke in April, 1981. Mr. Burke's home was subject to a lien and deed of trust held by Metropolitan. Those instruments contained the following provision:

> The Grantors further agree that they will not make any voluntary inter vivos transfer of the premises or any part thereof without first obtaining the written consent of the mortgagee. Any such transfer, if the mortgagee shall not so consent, shall constitute a default under the terms of this instrument....

The Nabours intended to finance the purchase of the house with a "wrap-around" mortgage, rather than with an assumption of the obligation currently existing against the home. They requested Metropolitan's consent to the sale. Metropolitan replied with a letter stating that consent would not be given without a satisfactory credit approval and assumption by the Nabours of Burke's note. Burke's attorney informed Metropolitan that the Nabours would not assume the existing loan.

Nabours had dealt with Metropolitan on one previous occasion. In April, 1980, Nabours purchased a house subject to a similar

provision in a note and deed of trust held by Metropolitan. In that transaction Nabours was told by Terry Irick, a vice president of Metropolitan, that Metropolitan did not foreclose when consent clauses were violated and that any response by the association would merely be a formality. The day before the sale of the Burke house, however, Irick called Nabours and told him that he recommended that they not complete the sale. Nevertheless, the sale was closed on April 9, 1981. Thereafter, Burke made payments on the house for several months.

In August, 1981, Metropolitan posted foreclosure notices and filed statements of record. These statements were contained in a document entitled "Resignation of Trustee and Appointment of Substitute Trustee." This document stated that Metropolitan held a promissory note executed by Alfred Burke, that the Nabours had assumed the note and that "default has occurred in the payment of said indebtedness." The court of appeals states in its opinion that the representations of record stated that the Nabours had defaulted on their obligation by non-payment. In fact, the statement of record concerning default and non-payment is correct, since the due-on-sale clause was breached by Burke and the accelerated amount due under the note had not been paid by him. Therefore, the only false statement of record concerned the assumption of Burke's obligation by the Nabours. In October, Nabours obtained a temporary injunction to prevent a forced sale of the house and this suit followed.

At trial, Nabours asserted that Longview was guilty of common law fraud, violations of the Deceptive Trade Practices Act, and that it had waived its right to foreclose. The jury found that the Nabours had suffered no actual damages, but awarded $126,200 in punitive damages in addition to attorney's fees. The trial court made permanent the temporary injunction prohibiting Metropolitan from foreclosing on the

Nabours' house for violation of the consent clause, and rendered judgment against Metropolitan for the punitive damages found by the jury and attorney's fees.

The court of appeals affirmed the granting of the injunction, held that the Nabours were not consumers under the Deceptive Trade Practices Act and reversed the judgment of the trial court as to punitive damages.

## PUNITIVE DAMAGES

The Nabours assert that the award of equitable relief against Metropolitan and the existence of evidence in the record of actual damage is sufficient to justify the award of punitive damages in this case. We disagree.

This court has faced a similar situation twice in the recent past. In *Doubleday & Company, Inc., v. Dr. N. Jay Rogers,* 674 S.W.2d 751 (Tex.1984), the defendant committed libel against Dr. Rogers. The jury found no actual damages yet awarded punitive damages. Dr. Rogers argued that he needed only show that he was *entitled* to actual damages. Because actual damages were to be presumed in a libel case, he argued that it was not necessary that he actually *recover* any actual damages. The theory advanced by Dr. Rogers relied upon presumed harm to support the award of punitive damages. The Nabours are forced to rely on the same theory of presumed harm, since the jury found that no actual damage existed. In *Doubleday,* the contention that presumed harm was sufficient was rejected by the court, which stated that "[t]he Texas cases are unanimous in holding that recovery of actual damages is prerequisite to receipt of exemplary damages." *Doubleday,* 674 S.W.2d at 751. In *Doubleday,* the court also stated: "[p]uni-

tive damages are not recoverable ... in the absence of a recovery of actual damages. This rule was most recently reaffirmed by this court in *City Products Corp. v. Berman,* 610 S.W.2d 446, 460 (Tex.1980)." *Doubleday, Id* at 753–4.

 Even in cases where actual damages are *not recoverable,* it is still necessary to allege, prove and secure jury findings on the existence and amount of actual damage sufficient to support an award of punitive damage. *Doubleday,* 674 S.W.2d 754;[1] *Berman,* 610 S.W.2d at 450; *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, at 409 (1934); *See also Burk Royalty v. Walls;* 616 S.W.2d 911 (Tex.1981).

The operative facts in *Berman* are identical to those before the court today. In *Berman,* an injunction was granted against a lessor to enforce a lease. The jury awarded the plaintiff punitive damages, even though it found no actual damages. The court of appeals dissolved the injunction and disallowed the award of punitive damages. This court reinstated the injunction, but affirmed the court of appeals judgment as to punitive damages.

Despite the fact that the injunction existed and that the jury found by answer to special issues that the breach of the lease had "resulted in damage or injury" to the plaintiffs, the court denied the right to punitive damages. It stated that "[w]hen a distinct, wilful tort is alleged and proved in connection with a suit upon contract, one may recover punitive damages, but even in that instance the complainant must prove that he suffered some actual damages." *Berman,* 610 S.W.2d at 450. The *Berman* court affirmed the reversal by the court of appeals of the award of punitive *damages*

---

1. The dissent states that first amendment freedoms were decisive in *Doubleday.* Punitive damages are allowed in libel cases based upon the same rules governing all torts. This court

stated that "[we] do not find it desirable to carve out of the settled rule *an exception* for libel cases." *Doubleday,* 674 S.W.2d at 754. (emphasis added).

*even though injunctive relief had also been granted.*[2]

This result necessarily follows from the rule that punitive damages must bear a reasonable proportion to actual damages. *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981); *Southwestern Investment Co. v. Neeley,* 452 S.W.2d 705 (Tex.1970). *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567 (Tex. 1963). The rule is not a rigid one, though, and its application is to be determined on an ad hoc basis by the facts of each case. No set ratio may be established to govern in all cases. *Kraus,* 616 S.W.2d at 910. It is only one of several factors to be considered in the determination of the appropriateness and reasonableness of an award of punitive damages. *Kraus,* 616 S.W.2d at 910; *Neeley,* 452 S.W.2d at 707. Further, the ratio serves as one gauge of the effect of bias, prejudice and passion on the jury. *Nolan v. Bettis,* 577 S.W.2d 551 (Tex.Civ.App.—Austin 1979, writ ref'd n.r. e.).

There is another, and more basic, rule that requires actual damages to be found prior to an award of punitive damages. Punitive damages are recoverable only after proof of a distinct, wilful tort.

*Amoco Production Co. v. Alexander,* 622 S.W.2d 563 (Tex.1981); *City Products Corp. v. Berman,* 610 S.W.2d 446 (Tex. 1980). This requirement applies equally to actions arising out of tort or contract, or those seeking equitable relief. *See Berman,* 610 S.W.2d 446; *Holloway,* 368 S.W.2d 567. Punitive damages must be contingent on a finding of actual damage since actual damage is a necessary element of the underlying tort upon which the punitive damages are to be based.

The Nabours cite *Fillion v. Troy,* 656 S.W.2d 912 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.), in support of their position that a mere grant of an injunction will support an award of punitive damages. We do not agree. *Fillion* did not involve injunctive relief. *Fillion* involved a recission of conveyances fraudulently induced. As in other cases where equity requires the return of property, this "recovery of the consideration paid as a result of fraud constitutes actual damages and will serve as a basis for the recovery of exemplary damages." *Holloway,* 368 S.W.2d at 568 (quoting from *Briggs v. Rodriguez,* 236 S.W.2d 510, 516 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.).[3] Further, the jury in *Fillion* made findings of the fair market

**2.** The dissent claims *Berman* is meaningless because the writings of the court were not required by a point of error. It is true that the punitive damages issue was not raised on appeal. It was not addressed *at all* in the court of appeals opinion. In fact, the judgment of the court of appeals was correct on this point. The *Berman* court wrote in order to affirm the judgment of the court of appeals. The court deliberately addressed the issue of punitive damages under the facts presented. No other logical choice remains to explain the writings of the court. While the statements may have been gratuitous, they were meant to serve a purpose. Any gratuity ended, however, when City Products, Inc., a plaintiff, filed its motion for rehearing. It forcefully argued, in a brief solely devoted to that purpose, that the reinstatement of the injunction by this court also authorized the reinstatement of the punitive damage award incident thereto. The motion for rehearing was overruled by the court.

**3.** The dissent ignores the fact that in every case where punitive damages have been allowed incident to equitable relief, the equitable relief has involved the *return of property* to the injured party. This is true in each of the cases cited by the dissent. *See Holloway* 368 S.W.2d at 582 ($228,900 recovered usurped corporate profits); *Oliver v. Chapman,* 15 Tex. 400 (1955) (annulment of certain real property conveyances); *Fillion,* 657 S.W.2d 912 (recission of deeds; jury finding as to fair market value of property restored to plaintiff); *Russell v. Truitt,* 554 S.W.2d 948 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.) (recovery of $8,000 in agency fees); *Pollard v. El Paso National Bank,* 343 S.W.2d 909 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.) (recission of fraudulently induced conveyance). The reliance by the dissent on the broad language of *Holloway* is misleading. The dissent has cited no case for the proposition that bare injunctive relief will support an award of punitive damages. The reasoning of *Holloway* requires that there be finding of actual damages or that some property be recovered to support the punitive damage award. *See* 368 S.W.2d at 583–4.

value of the property returned to the plaintiff. Therefore, the Nabours reliance on *Fillion* is misplaced.

■ Our holding in this case should not be confused with an absolute refusal to allow punitive damages in a case where equitable relief is had. In fact, it is recognized that "Texas courts, contrary to what appears to be the majority rule, *See* 48 A.L.R.2d 947, 949, will not deny exemplary damages simply because an action is equitable, rather than legal." *Mack v. Newton*, 737 F.2d 1343, 1363 (5th Cir.1984). Indeed, in the instant case the Nabours chose to seek actual damages only in the form of "loss of market value, if any, on the Plaintiff's home as a result of the conduct, if any, of the Defendant, Metropolitan Savings & Loan Association...." The jury returned an answer of "–0–" to the damage issue. Perhaps if the Nabours had not so limited the jury's consideration of actual damages, an adequate damage finding would have been made.[4]

■ In the instant case there is no finding of actual damage by the jury to support an award of punitive damages. Therefore, the court of appeals properly reversed that portion of the judgment of the trial court.

## DECEPTIVE TRADE PRACTICES ACT

■ The Nabours also assert that as a result of their attempts to influence Longview Savings to give its written consent to the sale of the house by Burke, they were entitled to damages and attorney's fees under the Deceptive Trade Practices Act. The court of appeals rejected this claim for attorney's fees, holding that the Nabours were not "consumers" within the meaning of the Act. We need not address that

question. The Nabours failed to recover statutory damages under the Deceptive Trade Practices Act. Thus, they are not entitled recover attorney's fees under the Act. Tex.Bus. & Comm.Code § 17.50; *McKinley v. Drozd*, 685 S.W.2d 7 (Tex. 1985).

After an examination of the record, we have determined that there is legally sufficient evidence to support the jury answers to the waiver issues. We find no reversible error in this part of the court of appeals judgment.

The judgment of the court of appeals is affirmed.

KILGARLIN, SPEARS, RAY and ROBERTSON, JJ., dissenting.

KILGARLIN, Justice, dissenting.

The court's decision today creates a rule disallowing an award of punitive damages incident to equitable relief, despite a defendant's wrongful acts. This disregard of a jury verdict is rationalized by a purported reliance upon judicial precedent. Not only does the court's attempt to adhere to such precedent rely upon an incorrect analysis of Texas law, but with a pen stroke today's decision discards Texas common law dating back to 1855. But, there is even a more fundamental problem with the result reached. In its sanction of wrongdoing, the opinion overlooks elementary legal policies that have justified the imposition of exemplary damages throughout history. Thus, I dissent.

The facts of this case illustrate the sophistry the court requires to reach its conclusions. Longview Savings sought to enforce a due-on-sale mortgage clause in an attempt to wrongfully foreclose upon the

---

**4.** The dissent raises visions of homeless families walking the streets because of a choice to pursue punitive damages rather than equitable relief. No such choice is imposed by this opinion. In the case at bar we are unable to ascertain whether the Nabours suffered any actual damages apart from lost market value of their house. Based upon the version of the facts argued by the dissent, the Nabours almost certainly suffered other damages. However, these damages were excluded from the jury's consideration by the charge. Thus, the Nabours have forced this so-called "Hobson's Choice" upon themselves.

Nabours' home, despite its earlier representation that it did not intend to enforce the clause. The Nabours' payments on the mortgage had always been timely and never in default. Yet, Longview Savings posted foreclosure notices that intentionally misrepresented its legal justification for foreclosing, falsely claiming the Nabours were in default.[1] Trial testimony established that Longview Savings, in all probability, was motivated by a desire to escape interest rates contained in the original mortgage and to obtain a new mortgage at a higher rate of interest. The Nabours family has, through an injunction, four years of litigation, time, inconvenience and money, established what both Longview and the Nabours family knew in 1981—that Longview had no right to foreclose. The jury's findings leave no doubt that Longview Savings *knew* that it was acting in a wrongful manner. Yet, Longview Savings proceeded in its attempt to take away the Nabours' home. Because the Nabours family had a right to live peacefully in their home without the unconscionable threat of wrongful foreclosure, they were awarded an injunction against Longview Savings. Because of the wrongful nature of Longview Savings' conduct, the jury used its independent social judgment to award punitive damages.

This court acknowledges the wrongful character of Longview Savings' conduct by affirming the injunction. Yet, this ruling provides little solace to Jim and Suzanne Nabours, for although they are told what

they have known since 1981—that Longview Savings was an intentional wrongdoer—they are also told that Longview Savings is not to be punished.

The court offers two "justifications" for its refusal of exemplary damages. The first justification is that money damages are required to determine if exemplary damages are properly proportionate. But, the court recognizes that proportionality is "only one of several factors to be considered in the determination of the appropriateness and reasonableness of an award of punitive damages." 700 S.W.2d 904. Moreover, there are ample criteria for determining whether a verdict for exemplary damages is excessive. *See Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). Finally, the court fails to observe that there is a basis for determining the proportionality of exemplary damages in this case: the value of the house. Since the recovery of exemplary damages is normally a factual question for the jury, taking the matter away from the jury cannot be justified by proportionality considerations alone.

The second justification given is that punitive damages require an intentional act.[2] This justification has validity, but not for the reasons cited. Requiring an intentional act is intrinsically related to the policy justifying exemplary damages. Exemplary damages should focus upon the defendant's conduct. As a social policy, exemplary damages serve to deter and punish the wrongdoer as well as deter other potential

---

1. The majority asserts that "the statement of record concerning default and non-payment is correct, since the due-on-sale clause was breached by Burke and the accelerated amount due under the note had not been paid by him. Therefore, the only false statement of record concerned the assumption of Burke's obligation by the Nabours." 700 S.W.2d 902–903. This is an incorrect summary of the facts. The misrepresentation as to default is established by the record. Cross-examination of Dennis Newsom, a loan officer for then Metropolitan Savings, revealed that the Bank had, in attempting to foreclose, represented that payments were in default. This was not true. The jury subse-

quently found that statements on the foreclosure documents were misrepresentations.

2. The majority opinion states that, "Punitive damages are recoverable only after proof of a distinct, wilful tort." 700 S.W.2d 904. This statement must be qualified in two ways. First, exemplary damages are recoverable in other situations. *See, e.g., Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981). Second, the proper test is that exemplary damages are recoverable when a plaintiff establishes an independent cause of action *and* conduct sufficiently wrongful to justify exemplary damages.

wrongdoers from acting. *See Hofer v. Lavender*, 679 S.W.2d 470 (Tex.1984). Exemplary damages as an enactment of social policy focusing upon the defendant's conduct is not a novel concept. Indeed, history records this justification as early as 2000 B.C. in the Code of Hammurabi. *See* Redden, *Punitive Damages* § 24 (1980). This philosophy has been remarkably consistent throughout history. Support for it can be found in Mosaic, Roman, medieval and English common law. *See, e.g., Huckle v. Money*, 95 Eng.Rep. 768 (K.B.1763).

However, in this case, the court shifts the focus from the defendant's conduct to the plaintiffs' choice of remedy. The court would compel the Nabours to forego their equitable remedy and allow wrongful foreclosure before permitting exemplary damages. The Nabours are thus given a Hobson's choice: either they must let their house be taken from them or they must abandon hope of recovering exemplary damages despite Longview Savings' intentional wrongful acts. Equity, instead of serving as a remedy against wrongdoers, serves to benefit a wrongdoer.

The result is plain to see. Longview Savings has attempted to wrongfully foreclose and is told that its acts were contrary to the law. The jury findings make it clear that Longview Savings knew that its acts were unlawful at the time foreclosure notices were posted. What motivation now exists to deter Longview Savings from acting wrongfully against future homeowners? What motivation now exists to deter other wrongdoers who might act in a similar manner? When the jury's social judgment is disregarded, deterrence of intentional wrongdoing cannot occur. Thus, the court renounces a social policy grounded in 4,000 years of jurisprudence rather than contributing to equity and justice by adhering to that policy.

Not only does the court avoid discussing these elementary legal concepts, it relies upon a legal fiction to justify its result. The court reasons that an equitable remedy is not the same as actual damages at law. Therefore, it denies exemplary damages.

This reasoning disregards the fact that Longview Savings' conduct forced the Nabours family to seek an injunction to prevent a wrongful foreclosure upon their home. The price for protecting their home has been four years of litigation. In addition to the time and aggravation exacted for protecting their rights in court, the Nabours have had to bear necessary costs in going to court and hiring an attorney. The court states that the Nabours have suffered no monetary damages. It is true that Longview Savings' acts did not affect the home's market value. It is also true that the Nabours cannot recover attorney's fees absent a statute or contract. Yet, to deny exemplary damages because there are no actual legal damages ignores the truth. The Nabours have been injured in fact if not in law.

Further, the majority's reliance upon the rule that actual damages must be recovered prior to exemplary damages is misplaced. The opinion's logic holds true *only* if reliance upon this rule is legally and historically justified. Use of and adherence to a rule established by precedent can only be justified if the historical context underlying the rule is understood. Certainly, no jurist would ever advocate following a rule of law blindly without understanding the rational and historical context that necessitated the rule in its inception.

The actual damages requirement was never created simply to require actual damages for the sake of requiring actual damages. It has never been the rule in Texas that in all instances actual damages are a mandatory prerequisite to allowing exemplary damages. The actual damages rule is part of a larger, broader rule that a plaintiff cannot recover exemplary damages *until* he first prevails upon an independent cause of action. This is because the law does not gratuitously award exemplary damages in a vacuum. First, the plaintiff must establish a legal right that

correlates with a corresponding duty imposed upon the defendant. Once that duty has been breached, establishing a cause of action, the plaintiff can recover exemplary damages if the defendant has acted wilfully or intentionally. In a typical case when the plaintiff alleges a cause of action, actual damages are required because actual damages are a necessary element of the plaintiff's cause of action. If the plaintiff establishes an independent cause of action that does not require actual damages as an element of his action, there is *no* justification or policy that exists that would disallow punitive damages.

This explanation of the actual damages requirement is so fundamental to understanding when punitive damages are appropriate that it has been the majority rule in the United States for over fifty years. In 1935, Charles McCormick, then Dean of the University of Texas Law School, in his treatise on Damages noted that "while a few courts have held that to sustain an award of exemplary damages there must be a finding of substantial actual damage, the majority view is that a finding of a malicious wrong giving rise to a cause of action, even though only for nominal damages, is sufficient." [3] McCormick, *Damages* § 83 at 293 (1935). Dean McCormick elaborates upon the rule by placing the actual damages requirement in its proper context:

> As the greater number of tort cases fall within the range of those injuries which

are not actionable without a showing of pecuniary damage or bodily harm, it has been natural for the courts to slide from the proposition stated in the previous paragraph that exemplary damages can only be allowed as an incident to an independent cause of action, to the generalization that 'actual' damages must be awarded as a prerequisite to the allowance of exemplary damages. Manifestly, the latter proposition restricts the allowance of exemplary damages more severely than the former, since it excludes from the realm of cases where punitive damages may be given all cases where an independent cause of action justifying nominal damages is established, without a showing of 'actual' damage.

\* \* \* \* \* \*

Consequently, it seems desirable to recognize the principle that, if a cause of action is found to exist by the jury, in a case where 'actual' damage is not an essential element of the cause of action, then, if the necessary culpability on defendant's part be established, a verdict for exemplary damages is proper, though the award of other damages is nominal *or absent entirely.* (Emphasis added). *Id.* at 293–94.

In this case, the Nabours have been awarded the equivalent of a tort award of actual damages, an equitable remedy. Damages are defined as compensation or

**3.** A majority of states have recognized that the key to allowing exemplary damages is establishing an independent cause of action—not recovering actual damages. *See, e.g., Haskins v. Shelden,* 558 P.2d 487 (Alaska 1976); *Starkovich v. Noye,* 111 Ariz. 347, 529 P.2d 698 (1975); *Longinotti v. Rhodes,* 215 Ark. 380, 220 S.W.2d 812 (1949); *Sterling Drug, Inc. v. Benatar,* 99 Cal. App.2d 393, 221 P.2d 965 (1950); *McConathy v. Deck,* 34 Colo. 461, 83 P.2d 135 (1905); *Glusman v. Lieberman,* 285 So.2d 29 (Fla.App.1973); *Village of Peck v. Denison,* 92 Idaho 747, 450 P.2d 310 (1969); *Hedworth v. Chapman,* 135 Ind.App. 129, 192 N.E.2d 649 (1963); *Pringle Tax Service, Inc. v. Knoblauch,* 282 N.W.2d 151 (Iowa 1979); *Capitol Savings & Loan Ass'n v. Hohman,* 235 Kan. 815, 682 P.2d 1309, 1311 (1984); *McClung v. Thomas,* 226 Md. 136, 172 A.2d 494 (1961); *Gould v. Starr,* 558 S.W.2d 755 (Mo.App.1977);

*Brown v. Grenz,* 127 Mont. 49, 55, 257 P.2d 246 (1953); *Gerlach Livestock Co. v. Laxalt,* 52 Nev. 191, 201, 284 P. 310, 313 (1930); *Singer Shop-Rite, Inc. v. Rangel,* 174 N.J.Super. 442, 416 A.2d 965 (1980); *I.H.P. Corp. v. 210 Central Park South Corp.,* 12 N.Y.2d 329, 239 N.Y.S.2d 547, 189 N.E.2d 812 (1963); *Eakman v. Robb,* 237 N.W.2d 423 (N.D.1975); *Beavers v. Lamplighters Realty Co.,* 556 P.2d 1328 (Okla.App.1976); *Rexnord, Inc. v. Ferris,* 294 Or. 392, 657 P.2d 673 (1983); *Hutcherson v. Pilgrim Health & Life Ins. Co.,* 227 S.C. 239, 87 S.E.2d 685 (1955); *Black v. Gardner,* 320 N.W.2d 153 (S.D.1982); *Bryson v. Bramlett,* 204 Tenn. 347, 321 S.W.2d 555 (1959); *Nash v. Craigco, Inc.,* 585 P.2d 775 (Utah 1978); *Wells v. Smith,* 297 S.E.2d 872 (W.Va.1982).

indemnity which may be recovered by any person who has suffered loss, detriment, or injury, whether to his person, property or rights, through the unlawful act or omission or negligence of another. *See Restatement (Second) of Torts* § 12A (1965). An injury is suffered when a legally protected interest is wrongfully invaded. *Restatement (Second) of Torts* § 7 (1965). Here, the Nabours had a legal right to use realty free and unencumbered from the threat of wrongful foreclosure. That right was invaded when foreclosure notices were posted. The Nabours sought an equitable remedy as a substitute for a situation where money damages would have been inadequate. An award of injunctive relief gave the Nabours a legal and economic power over their realty, protecting their rights. As an affirmative remedy conveying economic and legal power, an injunction is an independent remedy or cause of action which, if coupled with wrongful conduct, should allow exemplary damages.[4]

The above legal precepts are well established by Texas law. As early as our tenth year of statehood, this court in *Oliver v. Chapman*, 15 Tex. 400 (1855), awarded exemplary damages incident to an equitable remedy. Over one hundred years later, in *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963), we again enunciated that a plaintiff's choice of an equitable remedy cannot preclude recovery of exemplary damages. In *Holloway*, the plaintiff sought an accounting of profits against corporate fiduciaries. As an equitable remedy, this action did not obtain actual damages as compensation for injury done, but merely established legal ownership to corporate profits. The court's reliance on *Holloway* is misplaced, for in that case, although no actual damages were recovered, we allowed exemplary damages because the plaintiff established an independent equitable action and the existence of wrongdoing. We wrote:

> [A]n election to pursue the latter [equitable] remedy should not diminish [the plaintiff's] rights. Exemplary damages should be allowed when the act giving rise to a fictitious implied contract, and its breach, amounts to a wilful tort *since the rule allowing exemplary damages where the defendant acted wilfully, maliciously or fraudulently is one of general application.* (Emphasis added).

*Id.* at 583–84.

The justification for allowing exemplary damages incident to equitable relief was reinforced by the court's proper focus upon the defendant's conduct and not upon the plaintiff's choice of remedy.

> In the case at bar the plaintiff corporation has elected to sue for the profits gained by the defendants in breach of their duties as fiduciaries. The acts of the defendants supporting the recovery are acts which equity considers to be wilful and fraudulent, regardless of what may have been the actual motives of the defendants; here, of course, the jury has found that the defendants acted with malice. *The remedy elected by plaintiff should not preclude the recovery of exemplary damages ...* It is consistent with equitable principles for equity to exact of a defaulting corporate fiduciary not only the profits rightfully belonging to the corporation but an additional exaction for unconscionable conduct. *There should be a deterrent to conduct which equity condemns and for which it will grant relief.* (Emphasis added).

*Id.* at 584. The holding of *Holloway* has been recently extended by this court in at least two other cases. In *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502 (Tex. 1980), we wrote:

---

**4.** The majority attempts to create the illusion that an injunction is less than an independent cause of action by describing it in terms such as "bare injunctive relief." It should not be forgotten that an injunction is a cause of action that can only be sustained if the plaintiff establishes (1) a right, (2) potential injury or actual injury, (3) that can only be remedied with equitable relief. *See* Tex.Rev.Civ.Stat.Ann. art. 4552.

As we said in *International Bankers v. Holloway, supra,* in recognizing the right to a recovery of exemplary damages '[w]e should not say to defaulting fiduciaries that the most for which they can be held accountable in equity are the profits which would have remained theirs had they not been called to account.' *Id.* at 584.

*Id.* at 510. A similar holding was reached just last year in *Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984).

These principles have also been adopted in decisions by several courts of appeals. In *Pollard v. El Paso National Bank,* 343 S.W.2d 909 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.), the court awarded exemplary damages in conjunction with equitable relief without a finding of actual damages. *See also Fillion v. Troy,* 656 S.W.2d 912, 915 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Russell v. Truitt,* 554 S.W.2d 948, 955 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.).

The court, in its obsfucation of well established precedent, relies upon a number of supreme court cases. All of these cases are distinguishable. Although *Doubleday & Co., Inc. v. Dr. N. Jay Rogers,* 674 S.W.2d 751 (Tex.1984); *Amoco Production Co. v. Alexander,* 622 S.W.2d 563 (Tex. 1981); *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981); *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981); *Southwestern Investment Co. v. Neeley,* 452 S.W.2d 705 (Tex.1970); and *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397 (1934), all address the requirement of actual damages as a prerequisite to punitive damages, *none of these cases involved equitable remedies.* Indeed, it is significant that at least three cases cited by the majority actually awarded exemplary damages. *See Burk Royalty,* 616 S.W.2d at 911; *Alamo National Bank,* 616 S.W.2d at 908; *International Bankers,* 368 S.W.2d at 567.

Only two decisions cited in the court opinion receive more than a perfunctory mention by the majority. The first is *Doubleday & Company, Inc. v. Dr. N. Jay Rogers,* 674 S.W.2d at 751. Although a recent decision, *Doubleday* has nothing to do with today's decision. In that case, we decided whether exemplary damages should be allowed in a libel case when no actual damages were recovered. We were not confronted with the question of whether exemplary damages were a proper award incident to equitable relief. In fact, *no equitable relief was sought in Doubleday.*[5] In addition, because a libel action by its very nature must be balanced against first amendment rights, we were concerned with the effect of unwarranted exemplary damages upon free speech rights. *Id.* at 754. Needless to say, there are no such concerns in the case at bar. Finally, unlike the present case, we held in *Doubleday* that there was no evidence to support a finding of malice. *Id.* at 755–56.

The other case discussed by the court is *City Products Co. v. Berman,* 610 S.W.2d 446 (Tex.1980). Although *Berman* has a similar factual setting, an examination of that opinion reveals that it hardly stands for a well settled rule of precedent grounded in reason. The exemplary damages point in *Berman* was ancillary to the main holding of the case, which involved an interpretation of a restrictive covenant. Petitioners in that case *did not assign as a point of error* and did not brief the question of allowing exemplary damages, with an equitable remedy, but argued instead that the jury's award was without support in the evidence. No logic or reasoning is offered to support the court's point on exemplary damages. Finally, case authority relied upon by the court in *Berman* is as easily distinguishable as case authority in the court's opinion today. Contrary to the court's assertion, *Berman* is not identical. The issue urged here was not preserved as error in *Berman.*

5. The majority states that the Nabours must rely upon a presumed finding of actual damages. This is incorrect. The Nabours need only establish a remedy and the type of conduct that gives rise to exemplary damages.

Realizing that *Fillion v. Troy,* 656 S.W.2d 912, 915 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.), plainly states "the greater Texas authority supports the awarding of exemplary damages when rescission is allowed, even though *no actual damages are awarded*" (emphasis added), the court attempts to distinguish that holding. But distinction is impossible. Petitioner Fillion squarely presented as a point both in the court of appeals and in this court that it was error to award exemplary damages in the absence of actual damages. Return of consideration in *Fillion* was equated with actual damages, not because Ms. Troy received money, but because an equitable remedy is an independent cause of action. Moreover, it is hornbook law that rescission, like an injunction, is an equitable remedy. The recovery of property conveyed as a result of fraud is no different from the freeing from encumbrance a house upon which there has been a fraudulent foreclosure. The value of the property has been secured to its rightful owner in both instances. The court's attempt to distinguish one type of equitable remedy from another is in truth a distinction without a difference. This distinction can be found in no previous Texas case. It is nothing more than a mirage intended to semantically obscure elementary principles of fairness.

Not only has no previous Texas case ever created a special class of equitable remedies, but no case in any jurisdiction exists to support the unique contention that exemplary damages should be awarded only with some equitable remedies but not with others. In fact, states that have been confronted with the problem have more recently sought to award exemplary damages incident to equitable relief with or without actual damages. In *Village of Peck v. Denison,* 92 Idaho 747, 450 P.2d 310 (1969), the Idaho Supreme Court awarded exemplary damages incident to equitable relief, absent actual damages. The court wrote:

> The absence of a showing of actual damages need not bar an award of punitive

damages, for such a showing is not a talismanic necessity. The reason for such a requirement is that it first insures that some legally protected interest has been invaded. It prevents the assessment of punitive damages against one who may have caused damage without legal injury. There is no reason why an award of equitable relief may not fulfill this same function, for in either case it is necessary first to show an invasion of some legally protected interest.

*Id.* at 315. Last year the Kansas Supreme Court reached the same conclusion by noting that it was the deterrent function of exemplary damages that allowed recovery, not the recovery of actual damages. *Capitol Federal Savings & Loan Ass'n v. Hohman,* 235 Kan. 815, 682 P.2d 1309, 1311 (1984). Several courts have directly embraced Dean McCormick's analysis by holding that once the plaintiff has established an independent cause of action, wrongful conduct will allow punitive damages. *See, e.g., Haskins v. Shelden,* 558 P.2d 487 (Alaska 1976); *Nash v. Craigco, Inc.,* 585 P.2d 775 (Utah 1978); *Wells v. Smith,* 297 S.E.2d 872 (W.Va.1982). Other courts by focusing upon the defendant's conduct and placing the actual damages requirement in its proper perspective have awarded exemplary damages absent actual damages. *See, e.g., Starkovich v. Noye,* 111 Ariz. 347, 529 P.2d 698 (1975); *Sterling Drug Co. v. Benatar,* 99 Cal.App.2d 393, 221 P.2d 965 (1950); *Charles v. Epperson & Co.,* 258 Iowa 409, 137 N.W.2d 605 (1965); *Gould v. Starr,* 558 S.W.2d 755 (Mo.App.1977); *Miller v. Fox,* 174 Mont. 504, 571 P.2d 804 (1977); *Z.D. Howard Co. v. Cartwright,* 537 P.2d 345 (Okla.1975); *Black v. Gardner,* 320 N.W.2d 153 (S.D.1982). No jurisdiction has ever created a special class of equitable remedies. Thus, in its attempt to distinguish this case from Texas cases that have allowed exemplary damages incident to equitable relief, the majority opinion stands alone.

After proper analysis of the court's opinion, we are confronted with a simple prob-

lem. This court should not overrule well established Texas precedent and ignore fundamental concepts of law to reach a desired result. When there has been a malicious intentional act that allows an affirmative grant of an equitable remedy, exemplary damages should be allowed. "Equity in its true and genuine meaning is the soul and spirit of all law." Blackstone IV Commentaries § 27, 429 (Rev.Ed.1803). The court falls short with regard to that philosophy. I would allow exemplary damages and would affirm the jury's verdict.

SPEARS, RAY and ROBERTSON, JJ., join in this dissenting opinion.